JOHN ABBOTT & another, trustees, vs. MARY L. WILLIAMS & others.

GEORGE ALBREE, executor, & others vs. JOHN ABBOTT & another, trustees, & others.

Suffolk.   May 13, 1929. — July 11, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Trust*, Construction of instrument creating trust, Termination.

A testator by a twenty-first article of his will established a trust, and provided that stated sums be paid annually during their respective lives to eleven named persons, including among others his wife, son and daughters. In a subsequent paragraph of the will he provided for an annuity to be paid to his grandson. A twenty-eighth article read as follows: "Upon the decease of all the annuitants herein mentioned, viz: . . . [naming the eleven but not the grandson] . . . I direct my said Trustees and their successors to pay over and convey all the trust funds and estate of every kind then in their hands to my legal heirs and representatives whoever they may be, to be determined by, and the distribution to be made in accordance with, the Statutes of this Commonwealth." After all but two of the eleven and the grandson had died, the trust fund was nearly five times as large as was necessary to pay the stated annuities. Upon an appeal from a decree of a probate court allowing a petition by personal representatives of those who were heirs at law at the time of the death of the testator for distribution of such portion of the trust fund as was not needed for the payment of the remaining annuities, it was *held*, that

(1) There was no provision in the will indicative of a purpose that the trust should end at a date earlier than the death of the last of the eleven annuitants, and no sufficient reason appeared for an earlier termination: the testator's expressed intention must control;

(2) The decree was reversed.

A twenty-seventh article of the will above described provided in substance that, if there were not sufficient income in a given period to pay all the annuities in full, that to the testator's wife should be paid and the others should suffer the deficiency *pro rata*; that, in case of a surplus for any given year, the surplus should be used, so far as needed, to make up past deficiencies in certain of the annuities, if any, and the balance, if any, or the whole, if there were no such deficiency, "may in the discretion of my said Trustees and their successors be retained in their hands for like future use, or in case the same is not in the opinion of my said Trustees or their successors required for that purpose, it may be distributed between my wife, son and daughters share and

share alike"; and when from any cause the income "shall be more than sufficient to pay the annuities herein provided, that all such annual surplus income and interest, shall as often as semi-annually be divided and paid over to my wife, son and two daughters during their joint lives and to the survivors and survivor of them share and share alike." No provision was made for the disposition of surplus income between the date of the death of the last survivor of his wife and children and the termination of the trust. After the death of all but three of the annuitants, including the widow, the son and the daughters of the testator, there being a surplus of income not needed for payment of any previous deficiency in an annuity, the trustees sought instructions, and the Probate Court entered a decree that the surplus income be divided, one third to the administrator with the will annexed of the estate of the testator's widow, whose will left her estate to her blood relations, to two of her personal friends, and to two nieces of her deceased husband; and two ninths each to respective executors of the wills of the daughters and of the son. Upon appeal, it was *held*, that

(1) The expression, to "the survivors and survivor of them [the wife and children]", was not intended to make a gift of surplus income to the last survivor to extend beyond his death: a contention, that such income was to be paid to the executor of the survivor of the wife and children until the termination of the trust, could not prevail;

(2) The persons entitled to share in the surplus income were the representatives of the persons who would have received the testator's personal property according to the statute of distributions in force at the time of the testator's death, including the testator's widow;

(3) The decree was proper.

A twenty-second paragraph of the will above described provided that five years after the death of the testator the trustees should purchase for a sum not exceeding $12,000 a dwelling house for the free use and occupation of his daughter and son-in-law as a home during their joint lives and the life of the survivor of them. The trustees were directed to keep the property well insured and, in case the dwelling house should be damaged or destroyed by fire, to use the proceeds of the insurance to rebuild the same or, in their discretion, to purchase another house for the son-in-law and his wife with such proceeds, and upon their decease to turn over and add the property to the principal trust fund in their hands, to be finally disposed of as provided in the twenty-eighth article of the will. Before the trustees provided such house, the son-in-law entered into an agreement under seal with them that the house and land should be held as an investment of $12,000 as provided in the twenty-second article of the will and upon the trusts therein stated, and that the property was to be accepted by him in full satisfaction of his rights under the twenty-second article of the will. Such a house then was provided and the son-in-law occupied it until 1924, when, after the death of his wife, at his request the trustees sold it, the Probate Court, upon a petition by them for instructions, first having given them authority so to sell and to invest and apply the proceeds according to law and the will. In 1925, upon a further

petition for instructions, the trustees were ordered to pay the income of such proceeds, one half to the surviving son of the testator and one half to the executor of a daughter other than the daughter for whose benefit the dwelling house had been purchased. Upon a further petition for instructions by the trustees, the Probate Court in 1928, after the death of the last surviving child of the testator, decreed that the fund should not be used to purchase another house for the son-in-law, but that it should be added to the fund and disposed of in accordance with the twenty-eighth article in the will, above described. *Held,* that

(1) The terms under which the son-in-law accepted the house and his decision after many years of occupation to give up living in it, with a request that the trustees sell the property, when considered in the light of the provisions of article twenty-two in the will, required the conclusion that he had no further rights under that article;

(2) The trustees' duties as to the house were at an end;

(3) The fund should be added to the general trust fund as ordered by the Probate Court.

PETITION, filed in the Probate Court for the county of Suffolk on February 1, 1928, and afterwards amended, by the trustees under the will of George W. A. Williams, late of Boston, for instructions as follows:

1. Should the trustees invest a certain special fund of $11,165.93, received from the sale of a house previously provided by them for George Albree and his wife, or so much thereof as might be necessary, in a house in Concord, Massachusetts, for the free use and occupation of the said George Albree, free of all rent and remuneration, pursuant to the terms and provisions of the said twenty-second item of said will, or

2. Should the trustees turn over and add the said sum, then held as a special fund, to the principal trust fund in their hands to be finally disposed of as provided in the twenty-eighth item of said will, pursuant to the concluding phrase contained in said twenty-second item of said will?

3. Should the court answer both the preceding questions in the negative, what present disposition, if any, should the trustees make of the said special fund?

4. Should the court answer the first question in the affirmative and the trustees find that the entire amount of said special fund was not needed for that purpose, what dispo-

sition should they make of the balance of said special fund and the income therefrom?

Also a

PETITION, filed in the same court on June 20, 1928, for distribution of certain funds under the said will.

Article twenty-one of the will of George W. A. Williams is described in the opinion. Articles twenty-two, twenty-seven and twenty-eight read as follows:

"Twenty-second. I direct my said Trustees immediately after the lapse of five years from my decease, out of the principal trust fund in their hands mentioned in the twenty-first item hereof, to purchase a good and suitable dwelling house for a sum not exceeding twelve thousand dollars, in Denver, in the State of Colorado or in such town or city as my son-in-law George Albree, now of said Denver may desire, for the free use and occupation of himself and his wife Georgianna, as a home during their joint lives, and the life of the survivor of them, free of all rent and remuneration except that he and his said wife and the survivor of them, shall keep the said premises in good and tenantable repair and condition, and pay all taxes and assessments in the nature of taxes, which may be levied thereon during the said period.

"And I direct my said Trustees to keep the said estate well insured in three-fourths its value, and in case the said dwelling house shall be damaged or destroyed by fire to use and apply the said insurance money to repair or rebuild the same, or in the discretion of my said Trustees, to purchase another house for them with the said insurance money and upon the decease of the said George Albree and his said wife, I direct my said Trustees to turn over and add the said estate to the principal trust fund in their hands to be finally disposed of as provided in the twenty-eighth item hereof."

"Twenty-seventh. In case the annual income and interest from the principal trust fund held by my said Trustees or their successors under this my will should for any given period be insufficient to pay all the annuities herein provided, then it is my will that the annuity herein bequeathed

to my wife be paid to her in full and that the other annuitants herein mentioned shall bear and suffer such deficiency pro rata.

"In case however the annual income and interest from the principal trust fund shall for any given year, before the falling in of any of the annuities and before the death of any one of the annuitants provided for in this my will, be more than sufficient to pay all the said annuities, then it is my will that so much of such surplus income and interest shall be paid over to my children, brother or brother's wife, my sister, my nieces Annie W., Mary L., and Grace W., and Harriet E. Coffin, as shall make up any past deficiency they may have suffered, and the balance of such surplus, if any, may in the discretion of my said Trustees and their successors be retained in their hands for like future use, or in case the same is not in the opinion of my said Trustees or their successors required for that purpose, it may be distributed between my wife, son and daughters share and share alike.

"And I do hereby further provide that when the annual amount of the income and interest received from the principal trust fund held by my said Trustees and their successors, shall be increased by the falling in, turning over or adding of the trusts named in the nineteenth and twentieth items hereof to the principal trust fund, or by the death of my wife, children, sister, brother, brother's wife, nieces, Harriet E. Coffin or either of them, or from any other cause and the same shall be more than sufficient to pay the annuities herein provided, that all such annual surplus income and interest, shall as often as semi-annually be divided and paid over to my wife, son and two daughters during their joint lives and to the survivors and survivor of them share and share alike.

"And the shares of said surplus income and interest thus distributed to my son and daughters shall be inalienable and not negotiable or assignable nor subject to their debts or to the control of their creditors.

"And in case either my said son or daughters share in such surplus income and interest shall be attached or seized

on any process of law or in equity, then such son or daughter's right to a share of said surplus income and interest may in the discretion of my said Trustees and their successors, cease and further payment thereof to such son or daughter, be withheld, and my said Trustees and their successors shall expend the same directly themselves for such son or daughter's benefit.

"Twenty-eighth. Upon the decease of all the annuitants herein mentioned, viz: my wife, Harriet C. Williams, my sister Annie B. Merriam, my brother James M. W. and Mary L., his wife, my son Joseph B. and my daughters Georgianna and Helen L., my nieces Annie W., Mary L., and Grace W. and Harriett E. Coffin, I direct my said Trustees and their successors to pay over and convey all the trust funds and estate of every kind then in their hands to my legal heirs and representatives whoever they may be, to be determined by, and the distribution to be made in accordance with, the Statutes of this Commonwealth.

"To have and to hold the same to them and their heirs and assigns forever and this trust shall thereupon be terminated and cancelled."

Other material facts are stated in the opinion.

By order of *Dolan*, J., a decree was entered on the petition for instructions instructing the trustees "not to purchase a dwelling house for the respondent, George Albree, pursuant to the provisions of the twenty-second item of the will of the said George W. A. Williams," but "to turn over and add to the principal fund in their hands as trustees as aforesaid, the proceeds now in the hands of said trustees received by them from the sale of the dwelling house located in Concord, Massachusetts, heretofore erected by the prior trustees for said George Albree, the same to be finally disposed of as a part of the said principal fund as provided in the twenty-eighth item of said will;" and to pay the surplus income and interest not needed for the payment of outstanding annuities and the administration of said trust fund, one third to the administrator with the will annexed of the estate not already administered of the said Harriet

C. Williams, deceased wife of the said George W. A. Williams; two ninths to the executor of the will of Georgianna Albree, deceased daughter of the said George W. A. Williams; two ninths to the executors of the will of the said Helen Ladd Williams, deceased daughter of the said George W. A. Williams; and two ninths to the executor of the will of the said Joseph B. Williams, deceased son of the said George W. A. Williams. Sundry respondents appealed.

Upon the petition for distribution, a decree was entered by order of *Dolan*, J., directing the trustees to convert all the trust estate held by them in excess of $75,000 into cash, and to distribute the same, less the allowances to counsel and charges of the trustees, as follows: one third to the executor of the will of Georgianna Albree, one third to the executor of the will of Helen L. Williams, one third to the executor of the will of Joseph B. Williams; and the remainder of said excess, one third to the executor of the will of Harriet C. Williams, two ninths to the executor of the will of Georgianna Albree, two ninths to the executor of the will of Helen L. Williams, two ninths to the executor of the will of Joseph B. Williams.

The trustees and sundry respondents appealed.

*A. L. Taylor,* for the trustees, stated the case.

*J. Noble,* (*C. P. Bartlett* with him,) for Pearce P. Williams, executor.

*R. E. Goodwin,* for Pearce P. Williams and others.

*H. S. Davis,* for Helen B. Williams and others.

*F. H. Chase,* for George Albree, executor, and another.

*F. K. Rice,* for Mary L. Williams and others.

*A. Z. LeMoine,* for Austin E. St. Clair and others.

SANDERSON, J. This case comes up by appeals from decrees of the Probate Court entered upon two petitions, one by the trustees under the will of George W. A. Williams asking for instructions as to the disposition of a fund representing the proceeds of the sale of real estate which had been occupied as a home by George Albree in accordance with article twenty-two of the will; the other a petition by George Albree, executor of the will of his deceased wife, Georgianna

Albree, and by George Norman Albree personally and as one of the executors of the will of Helen L. Williams, deceased, seeking distribution of a part of the trust estate.

The will of George W. A. Williams was executed February 24, 1887, when the testator was sixty-seven years old. He died March 21, 1891, survived by his widow, Harriet C. Williams, and by a son, Joseph B. Williams, an unmarried daughter, Helen L. Williams, and a daughter, Georgianna Albree, wife of George Albree — the children by his first wife, Susan L. Williams, who died in 1868. Harriet C. Williams had no children. Georgianna Albree left surviving her one child, George Norman Albree, and died testate in 1894. Her husband was executor of and sole legatee under her will. Harriet C. Williams died testate in 1920, leaving her estate to her blood relations, to two of her personal friends, and to two nieces of her deceased husband. Helen L. Williams died testate in 1925. Her nephews, George Norman Albree and Francis C. Williams, are executors of her will, and she left the residue of her estate in equal shares to her niece, Constance Williams, her nephew, George Norman Albree, and her grandniece, Helen B. Williams, daughter of Francis C. Williams. Joseph B. Williams died testate in May, 1928, after the petition by the trustees was filed, leaving three children, Pearce P. Williams, Constance Williams and Francis Williams. Pearce P. Williams is the executor of the will of his father, who left all of his estate to his daughter Constance. After the death of Joseph B. Williams, the trustees amended their petition, seeking instructions as to the disposition of surplus income and interest accruing after his death.

By the twenty-first article of the will of George W. A. Williams the residue of his estate was given to trustees with instructions to pay the income in life payments in stated sums to his wife, son, daughters, sister, brother, widow of brother, three nieces, and a person not related. By the twenty-fifth article of the will an annuity was given to the testator's grandson, Pearce P. Williams. Of these annuitants, this grandson, the widow of the testator's brother, and a niece now survive. The aggregate of the annual payments

to them amounts to $2,480, and the trust fund is in excess of $331,000. The twenty-eighth article of the will provides: "Upon the decease of all the annuitants herein mentioned, viz: . . . [naming the eleven annuitants named in the twenty-first article of the will] I direct my said Trustees and their successors to pay over and convey all the trust funds and estate of every kind then in their hands to my legal heirs and representatives whoever they may be, to be determined by, and the distribution to be made in accordance with, the Statutes of this Commonwealth. To have and to hold the same to them and their heirs and assigns forever and this trust shall thereupon be terminated and cancelled." The grandson, Pearce P. Williams, was not named in article twenty-eight.

1. Upon the petition for distribution the judge found that the trust estate was largely in excess of the principal amount needed to support the three remaining annuities; that $75,000 was adequate for that purpose; and ordered that all of the trust estate in excess of $75,000 be converted into cash and distributed, less allowances to counsel and charges of trustees, to the personal representatives of the testator's heirs at law determined as of the date of his death.

In the twenty-eighth article of the will the testator fixed the date of the death of the last annuitant named therein as the time when the trust estate should terminate. There is no provision in the will indicative of a purpose that it should end at an earlier date. No sufficient reason appears for termination of the trust as to a part of the estate now. The testator's expressed intention must be controlling. *Schaffer* v. *Wadsworth,* 106 Mass. 19, 24. *Claflin* v. *Claflin,* 149 Mass. 19, 22. *Young* v. *Snow,* 167 Mass. 287. *Forbes* v. *Snow,* 245 Mass. 85, 93. In *Sears* v. *Hardy,* 120 Mass. 524, 541, 542, there was an intestacy as to the principal of the trust fund with a resulting trust in favor of the testator's son, and the order therein made for a partial termination of the trust was not inconsistent with the terms of the will. The decree of the Probate Court ordering a partial termination of the trust and distribution of principal is reversed. It is unnecessary at the present time to decide as of what date legal

heirs are to be determined or who is to be included among them.

2. The twenty-seventh article of the will provides that in case of a deficiency of the annual income from the principal trust fund the annuity to the testator's widow should be paid in full, and the other annuitants should bear and suffer the deficiency *pro rata*. It also provides that if there should be a surplus of income before the falling in of any of the annuities, it should first go to make up earlier deficiencies in certain annuities, and any surplus then remaining should in the discretion of the trustees be retained against the event of like future deficiencies or distributed to the testator's wife and children in equal shares. Further provision is made for the time when the amount of income and interest received from the trust fund, increased from any cause, shall be more than sufficient to pay the annuities: such income and interest shall as often as semiannually be divided and paid over to the testator's wife, son, and two daughters during their joint lives, and to the survivors and survivor of them share and share alike. In 1917, on petition of the trustees under the will of George W. A. Williams for instructions as to their duties under the twenty-seventh article, they were instructed that the surplus income should be divided and paid over to the testator's wife, son and daughter then living, share and share alike, and that future payments of such surplus should be made to the same persons during their joint lives and to the survivors and survivor of them share and share alike. Joseph B. Williams was the last survivor. The decree of the Probate Court ordered that the surplus income of the trust created under the twenty-first article of the will, accruing after the death of Joseph B. Williams and not needed for the payment of outstanding annuities and the administration of the trust fund, be paid, one third to the administrator with the will annexed of the estate of the testator's deceased wife; two ninths to the executor of the will of Georgianna Albree, the deceased daughter; two ninths to the executors of the will of the deceased daughter Helen L. Williams; and two ninths to the executor of the will of the testator's deceased son, Joseph B. Williams.

The testator made no provision for the disposition of surplus income between the date of the death of the last survivor of his wife and children and the termination of the trust.    The contention that such income is to be paid to the executor of the survivor, the son of the testator, until the termination of the trust cannot prevail.    The expression, to "the survivors and survivor of them," was not intended to make a gift of income to the last survivor to extend beyond his death.    It was a gift for his life only.    The words taken as a whole indicate that the testator was making provision for the payment of income to the four parties named for their joint lives, and whenever one of them should die the survivors should receive the whole income; and that the last survivor's right to income was that it should be paid to him while he survived and should cease at his death.    It was not a gift to the survivor to continue until the death of the last annuitant named in article twenty-eight of the will.    See *Springfield Safe Deposit & Trust Co.* v. *Dwelly,* 219 Mass. 65, 70; *Loring* v. *Dexter,* 256 Mass. 273, 280.    The case is distinguishable because of the terms of the limitation from *Bowditch* v. *Attorney General,* 241 Mass. 168, 175.    There is no provision indicating an intention that income should be accumulated or added to the principal of the trust fund. The persons entitled to share in this income are the representatives of the persons who would have received the testator's personal property according to the statute of distributions in force at the time of the testator's death, and his widow must be included.    Pub. Sts. c. 135, § 3.    *Lavery* v. *Egan,* 143 Mass. 389, 392.    *Sherburne* v. *Howland,* 239 Mass. 439, 442.    The decree in so far as it relates to this income is affirmed.

3.  Article twenty-two of the will provides that the trustees, immediately after the lapse of five years from the testator's death, shall purchase a dwelling house for a sum not exceeding $12,000 out of the principal trust fund in their hands, in such city or town as the testator's son-in-law, George Albree, may desire, for the free use and occupation of himself and his wife, Georgianna, as a home during their joint lives and the life of the survivor of them, free from all rent and remunera-

tion, except that he and his wife and the survivor of them shall keep the premises in good and tenantable repair and condition, and pay all taxes and assessments in the nature of taxes which may be levied thereon during that period.    The trustees were directed to keep the property well insured in three fourths its value, and in case the dwelling house should be damaged or destroyed by fire, to use the insurance money to rebuild the same or, in the discretion of the trustees, to purchase another house for them with the insurance money, and upon the decease of George Albree and his wife the trustees were directed to turn over and add the property to the principal trust fund in their hands, to be finally disposed of as provided in the twenty-eighth article of the will.

In 1900 the trustees bought a lot of land in Concord, Massachusetts, upon which they built a house at a total cost of $12,000; which was occupied by George Albree until 1924, when, at his request and by authority of the Probate Court, the trustees sold it, and they now hold the net proceeds of that sale.   By decree of the Probate Court entered in 1925 on petition for instructions the trustee was directed to hold the proceeds of the sale of this real estate as a special fund and pay the net income thereof until the date of the death of Helen L. Williams, one half to her executors and one half to Joseph B. Williams, and from and after that date to pay the net income to Joseph B. Williams who was the last surviving child of the testator, until the further order of the court. Before the trustees provided a house for Albree he entered into an agreement under seal with them that the house and land should be held as an investment of $12,000, as provided in the twenty-second article of the will and upon the trusts therein stated, and that the property was to be accepted by him in full satisfaction of his rights under the twenty-second article of the will.   In the petition filed by the trustees in 1924 for authority to sell the property, they stated that the sale was necessary and expedient for the reason that Georgianna Albree was dead, and George Albree had notified them that he no longer desired to occupy the premises as a home and wished the same to be sold; that they had an offer for its full value, and that it was desirable that the proceeds be

invested and applied both as to principal and income in accordance with the future directions of the court. George Albree assented to the petition. By decree of the court the trustees were authorized to sell the property and invest and apply the proceeds according to law and the will. The trustees now ask to be instructed whether they should, pursuant to article twenty-two of the will, buy a home for George Albree with this fund, in accordance with his request, or whether they should add the fund to the principal to be disposed of in accordance with article twenty-eight of the will, and if neither of those things should be done, what disposition should be made of the fund.

Testimony was introduced tending to prove that Albree requested the sale because of personal reasons connected with illness of a housekeeper and cook, because the house needed to have a substantial sum of money expended on it, and because he did not want to be at the expense of maintaining so large an establishment. In a letter to the trustees he stated that he no longer desired to live in the house but wanted it sold, and that he claimed that the income of the net proceeds of sale should be paid him for life, but that his request for sale was in no way conditioned upon what the court might decide as to the disposition of the proceeds. The Probate Court decreed that the trustees are not to purchase a house for Albree pursuant to article twenty-two of the will, but that the fund received by them from the sale of the house now in their hands be turned over to and added to the principal trust fund in their hands to be disposed of as a part thereof as provided in article twenty-eight of the will. No authority is expressly given the trustees to buy or build more than one house for Albree except in the case of fire. He was not given a life estate in a fund of $12,000, but a right to occupy a house furnished by the trustees. No power was given the trustees to pay him the income of the fund that was made available for the building of a house or to pay him the income from the proceeds of the house when sold. The terms under which he accepted the house built for him and his decision after many years of occupation to give up living in it, with a request that the trustees sell the property, when considered in the

light of the terms of the article in the will, lead to the conclusion that Albree has no further rights under article twenty-two of the will; that the trustees' duties thereunder are at an end; that the fund should be added to the general trust estate, and the income accruing thereon since the death of Joseph B. Williams be disposed of as a part of the income of that fund.

The decree on the petition of the trustees is affirmed. On the petition of George Albree and others for a partial termination of the trust and distribution, the decree is reversed and a decree is to be entered dismissing the petition. In each case costs as between solicitor and client are to.be in the discretion of the Probate Court.

*Ordered accordingly.*