Amos L. Taylor & another, trustees, *vs.* George Norman
Albree & others.

Suffolk.    February 6, 1941. — May 29, 1941.

Present: Field, C.J., Lummus, Qua, Cox, & Ronan, JJ.

*Trust,* Construction, Termination, Distribution.    *Evidence,* Of intent,
Extrinsic affecting writings.

Upon construction of a will containing two apparently repugnant pro-
    visions, evidence that one of such provisions had been added at the
    testator's direction to a former draft not containing it was competent.
Upon consideration of the general structure and all the provisions of a
    will containing a clause setting up a trust to pay annuities to eleven
    named persons during their lives, the trustee was instructed that
    another clause, added after the original draft of the will, giving an
    annuity, to be paid by the trustee from the same trust fund, to the
    testator's grandson during his life after becoming of age controlled a
    clause that upon the death of "all the annuitants herein mentioned,
    viz," naming the eleven persons specified in the first clause, the trustee
    should distribute the trust fund and the trust should terminate, and
    that therefore the trust must continue and the annuity to the grandson
    must be paid by the trustee during the life of the grandson notwith-
    standing that all the other eleven annuitants had died.
A certain trust originally for the benefit of twelve annuitants for life, with
    spendthrift provisions and provisions whereby the trustee might ex-
    pend sums due the annuitants for their support without payment di-
    rectly to them, upon the deaths of all but one of the annuitants must
    nevertheless continue *in toto* during his life; the purchase of an annuity
    or setting aside of a portion of the trust fund for him, and distribution
    of the rest, would not be proper.

Petition for instructions, filed in the Probate Court for
the county of Suffolk on January 19, 1940.

By order of *Dillon, J* , a decree was entered that the an-
nuity to Pearce Penhallow Williams had terminated upon

the death of the survivor of the annuitants named in the twenty-eighth article of the will, and that the trust fund in question be distributed among designated persons. Certain respondents appealed.

*Amos L. Taylor*, stated the case.

*M. E. Foster*, guardian *ad litem, pro se.*

*F. K. Rice*, for Rice, administrator, and others.

*E. C. Parks*, for Albree and others.

*J. Noble*, (*J. C. Rice* with him,) for Pearce Penhallow Williams.

*B. Corneau*, (*J. Finks & G. G. Beckett* with him,) for Kalenborn.

*H. S. Davis*, (*T. C. Banks, Jr.*, with him,) for R. G. Dodge, guardian *ad litem.*

QUA, J. The trustees under the will of George W. A. Williams, late of Boston, again desire the aid of the court in construing his will. See *Abbott* v. *Williams*, 268 Mass. 275. The main questions are correlative and for convenience may be stated as the single question whether upon the death in 1939 of the last surviving annuitant other than Pearce Penhallow Williams, the principal trust set up by the will came to an end and the fund became distributable under the twenty-eighth article of the will or whether the trust must continue until the death of Pearce Penhallow Williams in order to support an annuity of $1,200 a year given to him by the twenty-fifth article.

The will was executed in 1887 and was proved and allowed upon the death of the testator in 1891. The first article names the executors and the trustees. The second article gives the widow a legacy of $10,000, together with certain household and personal belongings of the testator. The third to fifth articles, inclusive, give certain pictures to the testator's son and two daughters. The sixth to eighteenth articles, inclusive, give legacies, for the most part in money to an amount not exceeding $1,000, to various relatives and others. The nineteenth article devises the testator's dwelling house on Newbury Street in Boston to the trustees for the use of his widow during her life but at her decease to be added to the "principal trust fund" of

the residue for the purposes named in the twenty-first article. The twentieth article creates a separate trust for the benefit of Sarah E. Merrill during her life, any of the fund remaining at her death to be added to the "principal trust fund" of the residue for the purposes named in the twenty-first article. The twenty-first article places the residue of the estate in trust to pay certain sums per annum for their respective lives to eleven persons named in seven numbered subdivisions of the article. These persons are the widow of the testator, his son and two daughters, his sister, his brother and his brother's wife, three nieces and one Harriet E. Coffin, who does not appear to have been a relative. The amounts annually payable vary from $6,000 in the case of the widow to $100 in the case of Harriet E. Coffin. The total amount annually payable while all were living would be $13,060. The trustees' inventory in 1892 showed that the corpus of the principal trust, not including the Newbury Street residence occupied by the widow, amounted to $208,868.43. All these annuities, except that to the widow, were protected by spendthrift provisions against assignment or attachment by creditors of the annuitant, and those to women were to be free from the control of their husbands. The twenty-second to twenty-fourth articles, inclusive, directed the trustees to purchase dwelling houses for the use respectively of the testator's son and daughters and their spouses for life, with provision that the properties purchased should fall into the "principal trust fund" after the termination of the life interests. Then follows the twenty-fifth article in these words:

"I give and bequeath unto my grandson Pearce Penhallow Williams, the son of my son Joseph B. Williams, of the City and State of New York, out of the principal trust fund in the hands of my said Trustees mentioned in the twenty-first item hereof the sum of One Thousand Dollars and I direct my said Trustees to pay over the same to him when and in case he attains the age of twenty-one years. And I further give and bequeath unto my said grandson, an annuity of Twelve Hundred Dollars per annum for

and during the remainder of his natural life, beginning on the first day of the month next following the twenty-first anniversary of his birthday. And I direct my said Trustees to pay the said annuity to him from the principal trust fund in their hands mentioned in the twenty-first item hereof in equal monthly payments on the first day of each calendar month after he becomes twenty-one years old, and for the remainder of his natural life. And the said annuity shall be subject to the same restrictions and provisions as are imposed upon the annuity of his father under the second provision in the twenty-first item hereof."

The twenty-sixth article relates to the manner of investing the trust fund. The twenty-seventh provides that in case the income from the trust fund "under this my will" shall be insufficient "to pay all the annuities herein provided" the annuity to the widow shall be paid in full, and that "the other annuitants herein mentioned" shall share the deficiency. But if the income "before the death of any one of the annuitants provided for in this my will" shall be more than sufficient to pay "all the said annuities," so much of the surplus shall be paid over to all the annuitants mentioned in the will, described by relationship or name, except the widow (whose annuity was to be paid in full in any event) and Pearce Penhallow Williams as shall make up any past deficiency they may have suffered, any balance of such surplus to be retained by the trustees for like future use, or if in their opinion not needed for that purpose to be distributed among the wife, son and daughters; and, when the income shall be increased by the adding of the trust funds mentioned in articles nineteen and twenty or by the deaths of annuitants (mentioning all named in the will, except Pearce Penhallow Williams) and "shall be more than sufficient to pay the annuities herein provided," the surplus income shall be paid over to the widow, son and daughters and the survivor of them without being assignable or subject to their debts. The twenty-eighth article is in these words:

"Upon the decease of all the annuitants herein mentioned, viz; my wife, Harriet C. Williams, my sister Annie

B. Merriam, my brother James M. W. and Mary L, his wife, my son Joseph B. and my daughters Georgianna and Helen L., my nieces Annie W, Mary L, and Grace W, and Harriet E. Coffin, I direct my said Trustees and their successors to pay over and convey all the trust funds and estate of every kind then in their hands to my legal heirs and representatives whoever they may be, to be determined by, and the distribution to be made in accordance with, the Statutes of this Commonwealth. To HAVE AND TO HOLD the same to them and their heirs and assigns forever and this trust shall thereupon be terminated and cancelled.''

The remaining provisions are not now important, except that the thirtieth article gives a legacy to Josephine A. Small to which reference is hereinafter made.

It is apparent that if the twenty-fifth and the twenty-eighth articles are read literally, each by itself, they have now come squarely into collision with each other. Since all the annuitants specifically named in the twenty-eighth article have now deceased, by the literal terms of that article, unqualified by any reference to the twenty-fifth article, it has now become the duty of the trustees to distribute the entire trust fund. But such distribution would of course render it impossible for the trustees to perform the equally positive duty cast upon them by the twenty-fifth article to pay to Pearce Penhallow Williams out of this same fund an annuity of $1,200 a year at the rate of $100 on the first day of each calendar month "for and during the remainder of his natural life." He is still living and is over twenty-one years old. If each of these articles is read without qualification no compromise between them seems possible. The annuity to Pearce Penhallow Williams cannot fairly be construed as an annuity to him for the lives of the eleven other annuitants, to cease when the last of the eleven shall have died. Not only would this be an unusual provision, but it would be directly contrary to the repeated statement that his annuity is for the remainder of his own life. Moreover if the twenty-eighth article should control over the twenty-fifth his annuity might

never even have begun, because all the eleven might have died before he reached the age of twenty-one. All of them belonged to earlier generations, and he was a child when the will was made. The elaborate provisions of the twenty-fifth article might then have become wholly futile.

The annuity to Pearce Penhallow Williams is the subject of an entire separate article in the will, consisting of three paragraphs. The language is clear. It is difficult to doubt that this article expresses the intent of the testator. On the other hand, if we turn again to the twenty-eighth article we find that no question of construction would have arisen if the eleven annuitants had not been mentioned by name in that article, or if the name of Pearce Penhallow Williams had been included among them. In either case the opening words of the twenty-eighth article, "Upon the decease of all the annuitants herein mentioned" would have referred to the decease of all the annuitants mentioned anywhere in the will. This article would then have provided for final distribution of the trust fund after all the annuities had been fully satisfied according to the terms in which they were expressed. It would have been exactly what was to be expected from the general plan of the will. It is hardly too much to say that the conflict between the two articles is a conflict between the positive, affirmative provisions of the twenty-fifth article and the omission of a name from the twenty-eighth. Could there have been a mistake in omitting the name of Pearce Penhallow Williams from the twenty-eighth article? At the hearing in the Probate Court evidence was introduced tending to show that the will had first been drafted without any legacy to Pearce Penhallow Williams; that the testator then for the first time mentioned his desire to make a gift to his grandson and the twenty-fifth article was inserted, but that the scrivener neglected to insert the name of the new annuitant in the twenty-eighth article, although instructed to do so; and that the thirtieth and last article, granting a legacy of $500 to the scrivener who wrote out the will, was added at the same time. This evidence was competent, at least to the extent that it showed the physical fact that the twenty-fifth and thirtieth articles

had been added to a former draft which had not contained them, not to prove the intent of the testator independently of the words of his will, but to aid in their construction "in order to ascertain as nearly as possible with what purpose the words were employed." *Polsey* v. *Newton*, 199 Mass. 450, 453. *Morse* v. *Stearns*, 131 Mass. 389. *Lydon* v. *Campbell*, 204 Mass. 580. *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 582. Compare *Calder* v. *Bryant*, 282 Mass. 231, 238, 239; *Mahoney* v. *Grainger*, 283 Mass. 189. The judge merely found as a fact from this evidence that the "bequest to the respondent, Pearce Penhallow Williams, was inserted in the said will as directed by the testator." But the failure to name Pearce Penhallow Williams in the twenty-eighth article, where one would expect to find his name with the others, and the position of the legacy to the scrivener at the very end of the operative clauses of the will and separated from all other legacies would be explained if the evidence is true.

Apart, however, from the evidence and the finding there are further reasons discoverable in the will itself for believing that the twenty-fifth article represents the wish of the testator as it stands, without being cut down by the twenty-eighth article. The reference in the twenty-seventh article to the possibility of the income from the trust fund "under this my will" being insufficient "to pay all the annuities herein provided" almost certainly includes all annuities provided in any part of the will. None were "provided" in the twenty-seventh article itself. The annuity to Pearce Penhallow Williams was therefore one of the annuities which must suffer reduction in the event of insufficiency of income to pay all in full. The Probate Court so held in 1910 on a petition by the trustees for instructions, and the decree was affirmed by a single justice of this court. If this annuity was to suffer reduction with the others in case of insufficiency of income, it must in reason be entitled with the others to restoration of the deficiency when there should be an accumulation of surplus. Yet the name of Pearce Penhallow Williams is not included among the annuitants mentioned as entitled to restoration of deficiencies,

although all the other annuitants are included, except the widow, whom there was, of course, no need to include, as her annuity was never to be reduced. Later in the twenty-seventh article, where the testator provided that, when the available income should become larger through the deaths of annuitants, the surplus should be paid to his widow, son and daughters, he failed to name Pearce Penhallow Williams among the other eleven annuitants mentioned. Could there have been any reason why a surplus of income created by his death should not have been treated like a surplus created by the deaths of other annuitants? These omissions without apparent reason of the name of Pearce Penhallow Williams in these lists of annuitants in the twenty-seventh article are not decisive, but they tend to deprive the similar omission of his name in the twenty-eighth article of some of the significance which it might otherwise have. They are consistent with the parol evidence that the annuity to him in the twenty-fifth article was an afterthought, representing the testator's latest desire, and with the theory that his attention was not clearly directed to the wording with relation to that article of other portions of the will previously drafted. Moreover, it is worth mention that not only in the twenty-seventh article do the words "annuities herein provided" and "annuitants herein mentioned" seem to include all the annuities and annuitants referred to in any part of the will and not merely in that one article, although that article contains lists of annuitants which do not expressly name Pearce Penhallow Williams, but in other articles of the will, the words "herein," "herein mentioned," "hereinafter," and "hereof," refer to the whole will and not merely to the article in which those words occur. See articles 2, 7, 20, 21, 22, 23, 24, 25, 26 and 29.

Still further reasons are found in the general structure of the will. The testator's near relatives are the principal objects of his bounty. Yet his method of benefiting them is not by distributing his estate among them. It is by creating a group of annuities, each for the life of the annuitant, each carefully guarded against assignment or attachment, and the total approximately equal at the outset to

the amount of income which his estate might be expected to produce. Evidently the testator regarded lifelong security as the greatest *desideratum*. Distribution was secondary in his mind and was to occur only after the primary object should be accomplished. When he included in his will the annuity to Pearce Penhallow Williams, although it was not to begin until after the annuitant reached the age of twenty-one, it was then, like the other annuities, described as continuing during his natural life. It was to be paid from the same trust fund and in the same manner as the other annuities. The same spendthrift provisions were incorporated in it by reference. It is difficult not to believe that the testator had in mind the same benefit to his grandchild — lifelong security to the extent of the annuity — that he must have had in mind for his children and his other relatives. It is difficult to believe that he intended that this one annuity out of the entire group should be cut down from the life interest which he purported to create to something less as a result of the distribution provisions of the twenty-eighth article.

A general description such as that of the annuitants in the twenty-eighth article is not necessarily limited by a following particular description. The tenor of the instrument as a whole may be such as to indicate that the general description represents the true intent and that the particular description is inaccurate. *Allen* v. *White*, 97 Mass. 504, 506, 507. *Martin* v. *Smith*, 124 Mass. 111, 113. *Pope* v. *Pope*, 209 Mass. 432, 440, 441. The industry of counsel has discovered a number of cases in which it has been held that a defective specific enumeration introduced by "viz," or otherwise, will not defeat the intention of the testator as indicated by a preceding general statement and supported by the plan and structure of the will as a whole. *Bridges* v. *Bridges*, 8 Vin. Abr. 295, pl. 13. *King* v. *George*, 4 Ch. D. 435. *Garth* v. *Meyrick*, 1 Bro. C. C. 30. *Stebbing* v. *Walkey*, 2 Bro. C. C. 85. *Humphreys* v. *Humphreys*, 2 Cox, 184. *Garvey* v. *Hibbert*, 19 Ves. 125.

For all the reasons indicated we believe that the wording of the twenty-fifth article controls that of the twenty-

eighth. *Williams* v. *Thacher*, 186 Mass. 293. It is the duty of the trustees to continue to pay the annuity to Pearce Penhallow Williams out of the trust fund "for and during the remainder of his natural life."

We have given careful consideration to all arguments presented tending to a contrary conclusion. Perhaps the most impressive of these is that the testator could not have intended that a large trust fund must continue to be held intact, possibly for many years, in order to pay a single small annuity to one annuitant of a later generation than any of the others, while the income in excess of that required to pay this annuity must continue to be paid over as intestate property (according to the former decision in *Abbott* v. *Williams*, 268 Mass. 275, 285) to persons who would have been the testator's distributees as of the time of his death if he had died intestate. But the scheme of the will was almost sure to produce a similar result for a substantial period of time even if Pearce Penhallow Williams had never been made an annuitant. All of the eleven other annuities were small, except that of the widow. An excess of income was almost certain to result as the annuitants died one by one and as the subordinate trusts fell in. The time would come when only one or two annuitants would remain alive. Substantially this state of affairs had come about as early as 1928 quite apart from the annuity to Pearce Penhallow Williams and was one of the causes of the former litigation. This situation is accentuated by the fact that an annuitant of the later generation is now the sole survivor, but it is not otherwise altered.

Then, too, it is urged that by the construction we give to the will Pearce Penhallow Williams will receive only his annuity during his lifetime and will be deprived of all interest as a distributee. The answer to this is that the testator did not permit his own children or any of his beneficiaries who were living in his lifetime to enjoy the capital of his estate as distributees. His provision for them was primarily in the form of annuities and secondarily, in the instances of his wife and children, in the form of a division of surplus income.

Reliance is placed by some of the parties upon the rule that of two repugnant provisions the one appearing later in the will is to be deemed to express the final purpose of the testator. Not only is the application of this proposition to this case rendered difficult by the uncontradicted evidence to which reference has already been made, but the rule itself is a highly conventional one to which resort should be had only where a scrutiny of the whole will fails to reveal the testator's intent with reasonable certainty. See *Shattuck* v. *Balcom,* 170 Mass. 245, 251; *Sewall* v. *Elder,* 279 Mass. 473, 477; *Waters* v. *Trefouret,* 117 Va. 186 (a case in certain respects much like the present one).

The effect of the apparent repugnancy between the twenty-fifth and the twenty-eighth articles of the will was not decided in *Abbott* v. *Williams,* 268 Mass. 275. There was then no necessity to decide that question. It was not argued in the briefs, although some reference was made to the difference between the two articles. It was not discussed in the opinion. It is true that on page 283 the court said that in the twenty-eighth article "the testator fixed the date of the death of the last annuitant named therein as the time when the trust estate should terminate." This, of course, was a paraphrase of part of the language of the twenty-eighth article; but nothing was said of the twenty-fifth article, and no attempt was made to compare the two. The court merely added, "There is no provision in the will indicative of a purpose that it [the trust] should end at an earlier date." The decision went no further than to hold that the trust was at least not terminable at any earlier date than the death of the last annuitant named in the twenty-eighth article.

It is natural that persons who believe they would be distributees if the trust were ended now should desire to end it now, but the purposes of the trust have not yet been fully accomplished. The trustees still have active duties to perform, particularly with reference to the annuity to Pearce Penhallow Williams. These duties under the terms of the twenty-fifth and twenty-first articles may in certain circumstances include the expending of the sums to which he is

entitled directly for his maintenance and support without paying them to him. The purchase of an annuity for him would not be the equivalent of the protection the testator intended to give him. The setting aside of a part of the fund to pay his annuity and the present distribution of the balance would be inconsistent with the decision upon this same trust in *Abbott* v. *Williams,* 268 Mass. 275, 283. See also *Weeks* v. *Pierce,* 279 Mass. 108, 115–117. The trust must continue until its objects are completed. *Springfield Safe Deposit & Trust Co.* v. *Friele,* 304 Mass. 224, 227–230, and cases cited. If the results of the view we take may be thought unfortunate by some of the parties, this is a consequence of the dispositions which we think the testator intended to make and of the concentration of his interest upon the near future rather than upon the more remote future. If this is a fault in the will it is a fault of fairly common occurrence. It is not for us to try to draft a better will in the light of conditions fifty-four years later.

With respect to final distribution of the trust fund, it is unnecessary now, just as it was unnecessary when the former appeals were here, "to decide as of what date legal heirs are to be determined or who is to be included among them." *Abbott* v. *Williams,* 268 Mass. 275, 283, 284.

The decree of the Probate Court is reversed, and a decree is to be entered instructing the trustees that the annuity to Pearce Penhallow Williams provided by the twenty-fifth article of the will has not terminated; that the trust created by the will has not terminated either wholly or partly; that the annuity to Pearce Penhallow Williams shall continue to be paid to him "for and during the remainder of his natural life" from the income of the fund in the trustees' hands in accordance with the twenty-fifth article of the will; and that the surplus income shall continue to be paid in accordance with the decision in *Abbott* v. *Williams* to "the representatives of the persons who would have received the testator's personal property according to the statute of distributions in force at the time of the testator's death," including his widow. *Abbott* v. *Williams,* 268 Mass. 275, 285.

Costs and expenses of these appeals are to be in the discretion of the Probate Court.

*Ordered accordingly.*