ELIZABETH S. HALEY & others *vs.* CITY OF BOSTON.

A testatrix devised land to her three nieces or the survivors or survivor of them, "but if all three die without heirs " then the income to J. W., son of their brother J. B., and "in case J. W. should die without issue " then to a charity. A preamble of the will declared that the testatrix desired, in making it, to benefit her near relatives; and these nieces and their brother were her nearest relatives. At the date of the will, two of the nieces, aged respectively forty-six and thirty-nine years, were unmarried; and the third, who was married, was forty-four years old. *Held,* that the term "without heirs," so used, signified "without children."

WRIT OF ENTRY, dated December 20, 1870, by children of John B. Haley, to recover a parcel of real estate on Cambridge Street in Boston, to which both parties claimed title under the will of Lucy Bullman. Trial in the superior court, before *Dewey,* J., who with consent of the parties made a report thereof, by which the facts appeared as follows :

Lucy Bullman died before January 9, 1832, on which day her will, dated December 26, 1828, was proved and allowed in the probate court for this county. At the date of the will, she was a widow, and had living neither child, father, mother, brother or

sister; only three nieces, Nancy Haley, Sarah Haley, and Mary Haley De Wolf, sister of said Nancy and Sarah, and wife of Allen De Wolf; one nephew, John B. Haley; one grandnephew, John W. Haley, the then only child of said John B.; and no grandniece. In the will, after a preamble in which she set forth that she made it "wishing that the property with which God has blessed me, and of which I may die possessed, may after my decease go to those of my near relatives and friends for whom I have a regard," she devised, in the second item, " to Nancy Haley and Sarah Haley, my two unmarried nieces, my house and land on the south side of Cambridge Street; also my house and land on the west side of Belknap Street;" and also a parcel of real estate elsewhere. In the third item, she bequeathed $100 to Mrs. De Wolf, and provided that, "in case she ever becomes reduced and equally needy with her two sisters, Nancy and Sarah, then she shall come in and enjoy one equal third part of those three pieces of real estate, but none of the estates are to be sold, unless it be to pay debts and legacies, nor are they to be divided and held in severalty, but they are to be leased, and the rents and profits divided between the two first named nieces, and the said Mary if she becomes as needy and dependent as her two unmarried sisters." In the fourth item, she authorized her executors to sell the third parcel of real estate mentioned in the second item, without license of court, for payment of her debts, and divide any surplus of the proceeds between the three nieces. In the remaining items, to the thirteenth, she gave specific legacies. The thirteenth item was as follows:

"13. My two estates, one on Cambridge Street, and one on Belknap Street, are to go to the three sisters equally; and if either of them die, then to the surviving two; and if two die, then to the single survivor; but if all three die, without heirs, then the income of said estates is to go to John W. Haley, son of John B. Haley; and in case John W. Haley should die without issue, then my real estate is to go to the city of Boston, for the benefit of the poor. It is never to be sold; but the income is to go for the purposes set forth as above. But it is always to be understood that Mrs. De Wolf is not to come in for any

benefit derived from my real estate, until she shall be needy and dependent, as her sisters now are ; and she will, in my opinion, be so, if her husband should become insolvent, or should die, not leaving any property for her support."

At the date of the will, Nancy Haley and Sarah Haley were respectively forty-six and thirty-nine years old, and Mrs. De Wolf was forty-four years old. Sarah Haley was ill with consumption when the will was made, and died soon afterwards, and Nancy Haley died October 26, 1869, neither of them having ever been married. Mrs. De Wolf died in July 1849, without having had a child. John W. Haley died without issue, in July 1849. John B. Haley died October 17, 1857 ; and the demandants are his children born after the death of the testatrix.

If the demandants were entitled to recover on these facts, judgment was to be ordered for them, otherwise for the tenants.

*S. J. Thomas*, for the demandants. The father of the demandants was a near relative of the testatrix, and they are themselves so, and the preamble declares that the primary purpose of the will is to benefit such in preference to strangers. Whether this purpose shall have effect, depends on the construction of the word " heirs " in the thirteenth- item. The expressions " die without heirs " and " die without issue," occur in the same sentence ; and it is fair to presume that the testatrix intended the usual and technical difference of meaning by her difference of expression. If it be contended that it is absurd that she should intend to say that, in case the three nieces should die without heirs, then the land should go to one whose father was an heir and who might be one himself in case of his father's death, and therefore " heirs " must be construed to mean " children ; " the avoidance of that absurdity involves the assumption of others, first, that she should have contemplated that her nieces would have children, at their age and under their circumstances, and second, that she should have intended to disinherit their brother, who was as near a relative as they were. Her true purpose was, to provide that, at the death of the three nieces, their brother, John B. Haley, if living, should take the estate as heir, but if he was then dead, and John W. Haley alone of all her near relatives was left, then John W.

should take a life estate only, and if he should die without children, that would be the end of the Haley family and near relatives, and then it should go to the poor, of whom there is no end. Expressing her meaning in informal words, it was this : If, when the last survivor of my nieces dies, their brother and heir is dead, and there are no other heirs than his son John W. living, then I do not devise these estates to him absolutely, as he would otherwise take them, because he may die without children, and then there is an end of the Haley family, and then the poor shall have them. The purpose was, to limit the estate of John W. Haley.

*J. P. Healy*, for the tenants.

COLT, J. This case depends upon the construction to be given to the word " heirs " in the thirteenth section of the will of Lucy Bullman. The word, when unexplained or uncontrolled by the context or by other provisions, has a technical meaning which may not be departed from. *Clarke* v. *Cordis*, 4 Allen, 466, 480. But it is often used in a different sense, as meaning only children or issue. *Ellis* v. *Essex Merrimack Bridge Proprietors*, 2 Pick. 243. *Bowers* v. *Porter*, 4 Pick. 198. It is, in all cases, a question of intention, and we are of opinion that it was here used in the latter sense.

The near relatives of the testatrix are mentioned in the will ; and her plain purpose was to provide for these and their issue, by giving to them the income of the devised estates, and, failing such issue, to devote the same to the charitable purposes named. She declares that the property is never to be sold, but the income is to go for the purposes set forth. If the word " heirs " is to have its technical meaning, and include all who may succeed to the estate as in case of intestacy, then the provisions of the will in favor of John W. Haley and for establishing the contemplated charity would have been virtually inoperative, for it could not have been deemed possible that the three nieces should die leaving no one capable of inheriting the estate, however remote. And besides, the clause would contain the absurdity of providing that, in case of their death without heirs, then the income of the property should go to one who in case of his father's death would be an heir, and whose father would be an heir if living.

The construction contended for by the demandants makes the thirteenth clause of the will suicidal, and cannot be supported.

*Judgment for the tenants.*