GEORGE H. WALCOTT & another *vs.* GEORGIANA V. ROBINSON & others.

Suffolk.    January 13, 1913. — February 27, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Devise and Legacy.    Adoption.    Words, "Heirs."*

In this Commonwealth, where the rule in *Shelley's case* is abolished by statute, it is settled that, unless a contrary intention appears, a devise in remainder to the heirs of a life tenant is a contingent remainder, which at the termination of the life estate vests in those persons who then shall be ascertained to be such heirs.

A testator devised certain real estate to a daughter for life "and at her decease to her heirs and their assigns, forever, in fee." At the time the will was made children of the daughter were living, and it was argued that the word "heirs" should be construed to mean "children" so that the children of the testator's daughter would take remainders which vested at the death of the testator. The will of the testator contained distinct devises to others of his children with remainders to their respective "heirs and assigns." When the will was made some of these children had no issue and two of them were not married. *Held,* that there was no manifest intent of the testator to use the word "heirs" in the sense of "children," and that the remainders vested at the termination of the life estate in the heirs of the life tenant then ascertained.

Under R. L. c. 154, §§ 7, 8, a devise to the heirs of a daughter of the testator does not include adopted children of such daughter as devisees, where it does not plainly appear to have been the intention of the testator to include adopted children.

PETITION, filed in the Land Court on December 30, 1911, by an adopted son of Hannah M. Walcott, afterwards Hannah M. Butterfield, who also claimed as a devisee under the will of said Hannah, and a grantee of an adopted daughter of said Hannah, against certain persons claiming as the heirs of said Hannah under such designation in the will of Elisha Woodward, to register the title to a parcel of land on Friend Street in Boston.

In the Land Court the case was tried before *Davis,* J., who ordered that the petition be dismissed and reported the case for determination by this court.

The will of Elisha Woodward is described in the opinion, where the fifth clause, on which the rights of the parties depended, is quoted.

Hannah M. Walcott was the daughter of Elisha Woodward.

She was born on May 10, 1815, and was married on April 29, 1832, to Lewis Walcott of Boston. At the date of her father's will, and at his death, her only children were living, namely, a daughter, named Hannah, and two sons, named respectively Lewis and George. The daughter Hannah married and had one son. Her husband and her son died in her lifetime, the son dying without issue. The daughter Hannah died, leaving her mother surviving as her only heir at law.

Hannah M. Walcott's son Lewis died about March 6, 1867, leaving a widow surviving him, but without issue, and leaving his mother as his sole heir at law.

Hannah M. Walcott's son George died on April 17, 1893, leaving no issue born in wedlock, but leaving a widow. He made a will in 1886, before his marriage, by the terms of which he devised all his estate to his mother in the event of her surviving him. He was the last surviving child of Hannah M. Walcott and she was his only heir at law. He left surviving him George Henry Innes and Chastina F. Sullivan, a natural son and a natural daughter by different mothers.

Hannah M. Walcott's husband, Lewis Walcott, died on July 12, 1873, and she married John Butterfield on June 10, 1885. The said Hannah and John, by proceedings in the Suffolk Probate Court adopted George Henry Innes and Chastina F. Sullivan as their children. Hannah M. Walcott Butterfield died on May 3, 1911.

By her will dated December 19, 1893, she gave her adopted son George Henry Innes Walcott one half her property, and also gave him the other half of her estate in trust for the said Chastina as beneficiary. Hannah M. Walcott Butterfield left no legitimate lineal descendants at the time of her decease. Her common law heirs, the respondents, were two sisters and the issue of deceased brothers and sisters.

*W. C. Cogswell,* for the petitioners.

*J. E. Kelley,* for the respondents.

SHELDON, J. The first question presented in this case arises under the will of Elisha Woodward. By the fifth clause of that will the testator gave to Hannah M. Walcott "the rents and use of land with the buildings thereon, situated and numbered sixty-two on Friend Street: To have, hold and enjoy the above bequest to

the said Hannah M. Walcott during her natural life, and at her decease to her heirs and their assigns forever, in fee: the said Hannah M. Walcott to come into possession of the above named bequest at my decease."

It is settled by our decisions that unless there is in this language of the testator, construed in connection with the whole of his will, and in the light of the circumstances which then existed and were known to him, evidence that he intended to give to the word "heirs" something other than its ordinary meaning, the remainder to the heirs of the life tenant after her decease must be held to be a contingent remainder to those persons who upon her death should be found to be her heirs. *Minot* v. *Harris*, 132 Mass. 528, 529. The remainder would vest at the moment of the termination of the life estate; but until such termination the persons entitled could not be ascertained. *Richardson* v. *Wheatland*, 7 Met. 169. *Putnam* v. *Gleason*, 99 Mass. 454. *Lavery* v. *Egan*, 143 .Mass. 389. *Blodgett* v. *Stowell*, 189 Mass. 142, 143. *Coffin* v. *Jernegan*, 189 Mass. 503. *Holmes* v. *Holmes*, 194 Mass. 552, 557. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35.

But the word "heirs" will be construed to mean "children" or "issue" when that appears to have been the manifest intent of the testator. *Haley* v. *Boston*, 108 Mass. 576. In that case it was said that this word, "when unexplained or uncontrolled by the context or by other provisions, has a technical meaning which may not be departed from. *Clarke* v. *Cordis*, 4 Allen, 466, 480. But it is often used in a different sense, as meaning only children or issue. *Ellis* v. *Essex Merrimack Bridge Proprietors*, 2 Pick. 243. *Bowers* v. *Porter*, 4 Pick. 198. It is, in all cases, a question of intention." See to the same effect *Dexter* v. *Inches*, 147 Mass. 324, 326; *Eldridge* v. *Eldridge*, 14 Stew. 89. The petitioners contend that there is clearly manifested in the will an intention of the testator to designate by the word "heirs" the children of Hannah M. Walcott, and to give to those children a vested remainder expectant upon the ending of her life estate. They rely upon the decision in *Bowers* v. *Porter*, 4 Pick. 198. In that case, the testator by a will which purported to dispose of all his estate devised to his daughter Lydia the improvement of a farm, on condition that she should pay a stated sum of money to another daughter of his, and provided that the farm should be "equally divided

between all her legal heirs at her decease." She had children living when the will was made and when it took effect by the death of the testator. It was held that she took an estate for life, and that her children living at the death of the testator had a vested remainder in fee. In the present case also the life-tenant was a daughter of the testator and had children living when the will was made and at the death of the testator. That case was decided in 1827; the will in the present case was made in 1846. Accordingly the petitioners contend that the same rule of construction should be followed now that was adopted in that decision.

But after the decision in *Bowers* v. *Porter,* and before the making of this will, the case of *Richardson* v. *Wheatland,* 7 Met. 169, was decided. In that case *Bowers* v. *Porter* was somewhat criticised and explained, and the rule of construction to be applied was stated, although *Bowers* v. *Porter* was finally distinguished and the decision in *Richardson* v. *Wheatland* was made to turn upon the construction of the will then before the court. It is true, also, as has been said in behalf of the petitioners, that *Bowers* v. *Porter* often since has been cited without disapproval. But except perhaps in a New Jersey case (*Eldridge* v. *Eldridge,* 14 Stew. 89), we have not found it cited in support of the doctrine that in a devise of a life estate to a child or descendant of the testator with remainder to his heirs the word "heirs" should be construed to mean children, so as to give a vested remainder to the latter, instead of creating a contingent remainder in those who should be found to be the heirs of the life tenant upon his decease. For example, in *Wight* v. *Baury,* 7 Cush. 105, 109, *Trumbull* v. *Trumbull,* 149 Mass. 200, 202, and *Sands* v. *Old Colony Trust Co.* 195 Mass. 575, 579, it was cited as to the effect upon the law of this Commonwealth of St. 1791, c. 60, § 3, abolishing the rule in *Shelley's case,* 1 Co. 219. See now R. L. c. 134, § 4. In *Moore* v. *Weaver,* 16 Gray, 305, 307, and *Bosworth* v. *Stockbridge,* 189 Mass. 266, 269, it was cited to the point that a vested remainder to children may open to let in after born children up to the time fixed for distribution or enjoyment. In *Haley* v. *Boston,* 108 Mass. 576, 579, and *Dexter* v. *Inches,* 147 Mass. 324, 326, it was referred to in support of the proposition that the intent of the testator, as shown in his will, is to govern the meaning of the words used by him, as in *Dunn* v. *Davis,* 12 Ala. 135, and *Butler*

v. *Huestis,* 68 Ill. 594, 602. In *Merriam* v. *Simonds,* 121 Mass. 198, 202, it was cited to the point that mere postponement of possession does not make a remainder contingent. In *Minot* v. *Harris,* 132 Mass. 528, 529, it was cited to the point that the word "heirs" means those to whom intestate property would go.

The circumstances here presented are not the same as in *Bowers* v. *Porter.* In this will there are distinct devises to different children of the testator, with remainders respectively to their "heirs and assigns." Of these children, some had then no issue; two of his daughters appear to have been then unmarried. It cannot be supposed that by the limitation to their heirs he intended to create a remainder to the children whom they did not have and never might have, rather than to the heirs whom he naturally would expect them to have at their decease. A different construction cannot well be given to the same words used in the provisions made for his children respectively. The bequests of money to his grandchildren do not tend to show that he considered himself to have provided for them by limiting to them the property which he had given to their mother for life with remainder "at her decease to her heirs and their assigns forever."

Nor can the petitioners take this property as the adopted children and so the heirs of Hannah M. Walcott. Their claim is not under the will of their adopting mother, but under that of Elisha Woodward, her father; and it does not plainly appear to have been the intention of that testator to include the adopted children of any of his own children as beneficiaries under his will. Pub. Sts. c. 148, §§ 7, 8. R. L. c. 154; §§ 7, 8. *Wyeth* v. *Stone,* 144 Mass. 441. *Blodgett* v. *Stowell,* 189 Mass. 142. *Brown* v. *Wright,* 194 Mass. 540, 545. *Gammons* v. *Gammons,* 212 Mass. 454.

The rulings made by the judge of the Land Court were correct. Under the terms of the report, the entry must be

*Petition dismissed.*