ARTHUR SWEENEY, trustee, *vs.* MAUD H. KENNARD & others (and a companion case between the same parties).

Essex. April 7, 1954. — July 1, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Devise and Legacy*, Heirs at law. *Marriage*, Validity.

Under provisions of a will that certain realty and personalty, at the termination of life interests therein, should be "equally divided between . . . [two named sons of the testator] or their heirs by right of representation," where both the sons predeceased the surviving life beneficiary, one half of the remainder, upon that life beneficiary's death, should go to the statutory heirs of each son as a class determined as of the time of the death of that son, including his widow. [544–545]

A marriage in New York between parties domiciled in Massachusetts, one of whom had been divorced here by a former spouse less than two

years before the marriage and at the time of the marriage was pro-
hibited from marrying again by what is now G. L. (Ter. Ed.) c. 208,
§ 24, was not invalid under what is now c. 207, § 10, if the parties to
the marriage did not intend to continue to be domiciled here. [546]

PETITIONS for instructions, filed in the Probate Court for
the county of Essex on April 23, 1953.

The cases were heard by *Phelan*, J.

*Arthur Sweeney*, stated the cases.

*John C. Twomey*, for Maud H. Kennard and others.

*Arthur A. Thomson*, (*Ralph D. Weston* with him,) for
Hill, administrator, and another.

WILKINS, J.  Two petitions by the trustee under the will
of John H. Horne, late of Lawrence, seek instructions as to
whom and in what amounts he should distribute principal
under the third clause of the will, which was proved in the
Probate Court, Essex County, in 1904.  The material por-
tions of the third clause are: "To my son George A. Horne
I give and bequeath my homestead . . . together with all
the household furniture . . . to be used and enjoyed by
him during his natural life.  Also . . . [certain tangible and
intangible personal property].  In case the said George A.
Horne shall die without issue, his wife surviving him, I give
to her the use, occupation and income of my said home-
stead during her natural life, also the income of any of the
above described personal property which may remain in
his possession at the time of the decease of him the said
George A. Horne.  At the decease of her, the wife of my
said son George, my said homestead and the above described
personal property shall be equally divided between my sons
Byron F. Horne and John E. Horne or their heirs by right
of representation.  In case however that my son George A.
shall leave lawful issue, I give and bequeath to said issue
the above described property real and personal upon the
decease of the wife of him the said George."  The present
controversy turns upon the meaning to be given in the next
to the last quoted sentence to the words, "equally divided
between my sons Byron F. Horne and John E. Horne or
their heirs by right of representation."

George died in 1916, without issue, leaving a widow, Ethel, who died in 1951. John E. died in 1928 and Byron in 1932. The respondents are Evelyn M. Horne, the widow of John E.; his daughters, Gertrude E. Horne and Marion P. Horne; Bradley L. Hill, administrator de bonis non of the estate of John E.'s son, Henry, who died in 1932; Mattie E. Cleveland and Maud H. Kennard, daughters of Byron; and Bradley L. Hill, administrator of the estate of Byron's widow, Mae D. Horne, who died in 1953.

One petition relates to the personal property. Upon an earlier petition for instructions, it was decreed that George held the personal property for life with power to expend principal and income, and that at his death Ethel was to be entitled to the income for life with remainder to Byron and John E. absolutely if they should survive Ethel, otherwise to the persons "indicated by the terms of said will." The other petition concerns the proceeds of the homestead, sold pursuant to a decree of the Probate Court, which were held "for the benefit of the persons who would have been entitled to said homestead if such sale had not been made." On each petition a decree was entered that distribution should be made to Evelyn one sixth; to Gertrude, Marion, and the personal representative of the estate of Henry one ninth each; and to Mattie, Maud, and the personal representative of the estate of Mae one sixth each. Mattie and Maud appealed.

1. Where a will gives both realty and personalty to the heirs of a person, the gift is to those entitled to that person's real estate by descent, and such heirs are determined, as a general rule, at the time of the death of that person. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 529–531. *New England Trust Co.* v. *Watson*, 330 Mass. 265, 267. A widow is a statutory heir. *Seavey* v. *O'Brien*, 307 Mass. 33. *Newton-Waltham Bank & Trust Co.* v. *Miller*, 325 Mass. 330, 333. Such were the rulings, and, in our opinion, correct rulings, of the court below.

The requirement of a division between the sons "or their heirs by right of representation" to be made "At the de-

cease of her, the wife of my said son George," does not create unvested interests. *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 260–261. *Barker* v. *Monks,* 315 Mass. 620, 624. *Ryan* v. *McManus,* 323 Mass. 221, 230.

We fail to find in the instrument as a whole an intent, which would be contrary to the general rule, that the heirs of Byron and John E. should be ascertained at a time other than at their respective deaths. Neither do we discover any dominating purpose that none but blood relatives of the testator should share in the remainder after the death of one who was not a blood relative but the widow of his son George. We do not accept the contention that the widows of Byron and John E. are excluded because the will limits the recipients to lineal descendants. That would be to adopt an interpretation in substance synonymous with "issue." The testator, on the contrary, expressly mentions "issue" twice in the third clause, and, we think, would have done so again had the intended reference been to them. The case of *Blodgett* v. *Stowell,* 189 Mass. 142, relates to the rights of an adopted child of a son of the testator under a will probated in 1867, and makes no intimation as to the rights of a widow in the circumstances of these cases.

The appellants argue as though the only "heirs" who take are "heirs by right of representation," whereas it seems clear that the gift is to "heirs," and that it is their manner of taking which is to be "by right of representation." Reliance is placed upon G. L. (Ter. Ed.) c. 190, § 8, which defines taking by right of representation, but it is obvious from G. L. (Ter. Ed.) c. 190, § 3, which provides for the descent of real property, that taking "by right of representation" under a will is not confined to issue.

We are of opinion that the testator intended, as events happened, that the remainder should be divided between the statutory heirs of Byron as a class and the statutory heirs of John E. as a class, and that when he provided that the division in each class should be by right of representation, he contemplated the possibility that their statutory

heirs might be in different degrees of descent. See *Thompson* v. *Thornton*, 197 Mass. 273, 276; *McClench* v. *Waldron*, 204 Mass. 554, 556; *Wheeler* v. *Moulton*, 290 Mass. 567, 570–571; *Agricultural National Bank* v. *Miller*, 316 Mass. 288, 293–294; *Bradlee* v. *Converse*, 318 Mass. 117, 119.

2. The appellants object to the estate of Mae D. Horne as a distributee because, they argue, she was not legally the widow of Byron. He was formerly married to Josephine H. Horne, who obtained from him a divorce in the Superior Court by a decree which became absolute on December 17, 1914. By statute he was prohibited from marrying again within two years of that date. See R. L. c. 152, § 21, which is identical with, and became, G. L. c. 208, § 24. On December 30, 1914, Byron married Mae D. Horne in New York. Their sworn application for a marriage license gave residences in this Commonwealth. At that time there was in effect St. 1913, c. 360, § 1, which read: "If any person residing and intending to continue to reside in this state who is disabled or prohibited from contracting marriage under the laws of this state shall go into another state or country and there contract a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state."

The quoted statute was substantially the same as what is now G. L. (Ter. Ed.) c. 207, § 10, and decisions with respect to the latter are in point. In order that c. 207, § 10, apply, not only must one of the parties have had a domicil in Massachusetts, but it must be found that that party had the intention to continue to have a domicil in this Commonwealth. *Murphy* v. *Murphy*, 249 Mass. 552, 554–555. *Atwood* v. *Atwood*, 297 Mass. 229, 233. *Levanosky* v. *Levanosky*, 311 Mass. 638, 641.

The probate judge made no report of material facts, and from the decrees awarding Mae D. Horne a distributive share must be implied the finding necessary to their support that the parties to the New York marriage did not intend to continue to be domiciled here. The reported evidence was

conflicting and did not require a different conclusion. There was testimony which could have been accepted by the judge to the effect that Byron and Mae D. Horne made their home in New Hampshire until 1917.

3. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*Decrees affirmed.*