BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
JANE P. NORTHEY & others.

Suffolk. November 9, 1956. — December 12, 1956.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Devise and Legacy*, Heirs, Estate for life of another, Remainder. *Trust*,
Income beneficiary, Estate for life of another, Remainder.

Under a will establishing a trust and directing payment of certain income
during the life of a life beneficiary to the testator's three brothers in
equal shares "and in case of the death of any of said brothers his
share of said income to be paid to his heirs," the share in income of an
heir of a brother who predeceased the testator vested in the heir at the
testator's death, and upon the heir's death before that of the life
beneficiary the personal representative of the heir became entitled to
the income formerly payable to the heir.   [204–205, 207]

Under a trust established by a will providing that the trust should ter-
minate upon the death of a life beneficiary and that the trust principal
should then "be divided equally between my three brothers and their
heirs, the heirs of any to take by right of representation," the de-
termination of the persons entitled to the principal at the death of the
life beneficiary was not postponed until that time, but the shares of
two brothers who predeceased the testator vested at his death in
their heirs determined at his death and the share of the third brother,
who survived the testator and predeceased the life beneficiary, vested
at the third brother's death in his heirs determined at his death; and
the portion so vested of any heir who predeceased the life beneficiary
was payable upon distribution to the heir's personal representative.
[204–205, 207]

PETITION, filed in the Probate Court for the county of
Suffolk on July 1, 1955.

The case was heard by *Keville*, J.

*Joseph R. Watkins*, stated the case.

*Paul B. Sargent*, for Jane P. Northey and others.

*Rhodes G. Lockwood*, (*Franklin Dexter* with him,) for
Naumkeag Trust Company, executor.

CUTTER, J. Edward A. Northey, the testator, died No-
vember 17, 1942, leaving a will pursuant to which Boston
Safe Deposit and Trust Company was appointed trustee.

By article Fourth of the will the residue of the estate was left to the trustee in trust "to dispose of the principal and income . . . as follows: — (a) To pay to Caroline T. Peabody . . . the income therefrom up to but not exceeding the sum of Twenty-five Hundred (2500) Dollars yearly by monthly installments during her life. (b) To pay the balance of said income above Twenty-five Hundred (2500) Dollars a year, if any, during the life of said Caroline T. Peabody in equal shares to my three brothers the said Herbert W. Northey, Henry B. Northey . . . and William E. Northey . . . and in case of the death of any of said brothers his share of said income to be paid to his heirs. (c) Upon the death of said Caroline T. Peabody said Trust shall terminate and the Trust Fund shall be divided equally between my three brothers and their heirs, the heirs of any to take by right of representation."

Herbert predeceased the testator leaving a widow but no issue. William predeceased the testator, leaving a widow and three children, all still living. Henry was living at the testator's death, but died in 1952 leaving a widow and a son, both still living. Caroline T. Peabody died in August, 1956, after the decree on the present petition for instructions was entered by the Probate Court.

In 1943, shortly after the testator's death, the Probate Court, by decree from which no appeal was taken to this court, instructed the trustee that the income, above the $2,500 payable to Caroline T. Peabody (hereafter called the surplus income), was to be paid five twelfths[1] to Henry and the balance in certain specified proportions to the heirs of Herbert[2] and William.[3] The 1943 decree purported also to

---

[1] Henry received four twelfths under clause (b) as a surviving brother of the testator and one twelfth as an heir of Herbert determined as at the death of the testator.

[2] Herbert's heirs, determined as at the testator's death, were his widow (who took one sixth of the surplus income), Henry (who took as heir of Herbert one twelfth of the surplus income) and the three children of William (who each took as such heirs three one hundred eighths of the surplus income).

[3] William's three children each took as heirs of their father, determined as at the testator's death, eight one hundred eighths of the surplus income in addition to their respective shares as heirs of Herbert. See note 2, *supra.* William's widow, as one of his heirs, took one ninth of the surplus income.

determine that, at the death of Caroline T. Peabody, the principal would be distributable in the same shares and to the same persons.

This distribution of surplus income continued until 1952 when the testator's brother Henry died testate. A new petition for instructions was brought and was heard by this court in 1954 on appeal (see *Boston Safe Deposit & Trust Co.* v. *Northey,* 332 Mass. 110). The trustee was then instructed, by decree after rescript, that Henry's five-twelfths[4] share of the surplus income was to go to Henry's heirs (his widow, five thirty-sixths, and his son, ten thirty-sixths) rather than to Henry's estate. This court thus construed the words "in case of the death of any of said brothers" in article Fourth, clause (b), as referring to the death of a brother at any time prior to the death of Caroline T. Peabody, so that Henry's heirs would be determined, for the purposes of clause (b), at Henry's death (which took place after the testator's death) rather than at the testator's death, as in the case of the brothers who had predeceased the testator.

In 1954, Herbert's widow, who theretofore had been receiving (see note 2, *supra*) one sixth of the surplus income, died. This petition was filed by the trustee in 1955 seeking, in the light of this new development, instructions about the subsequent distribution of all of the surplus income. The executor of the will of Herbert's widow filed an answer, requesting instructions not only with respect to the subsequent distribution of the surplus income, but also with respect to the distribution of principal which would take place after the death of Caroline T. Peabody, who was then still living. The answers admitted the allegations of the petition and, by stipulation of counsel, it was agreed (a) what

---

[4] The record and briefs in the 1954 case (332 Mass. 110) did not present plainly the possibility of a different disposition at that time of (a) the one-third share of surplus income which Henry had been receiving as a surviving brother of the testator and (b) the one-twelfth share (see note 1, *supra*) which Henry had been receiving as heir of Herbert. No express provision of the will required the later divestment of the one-twelfth share or of any other share received by an heir of the testator's brother, upon the death of that heir. The only parties affected have not appealed from a portion of the decree here under review, providing that this one-twelfth share of surplus income be paid to Henry's executors rather than to his heirs.

persons were the "heirs" of Herbert, William and Henry, respectively, determined as at the death of each of them, as at the death of the testator, and as at the date of the hearing in the Probate Court, and (b) what persons were the heirs of the testator determined at his death. A guardian ad litem was appointed to represent the interests of any persons unborn or unascertained.

On February 29, 1956, a decree was entered by the Probate Court determining in effect, *first,* that the one-sixth share of the surplus income which Herbert's widow, as his heir, had received prior to her death was thereafter to be paid to the executor of the will of Herbert's widow; *second,* that the payments of the other shares of surplus income established by the decree after rescript (see 332 Mass. 110) were to continue except for a minor modification[5] not here material; and, *third,* that, at the death of Caroline T. Peabody, the principal of the trust property was to be distributed in the same manner and to the same persons as the surplus income in the period following the decree, that is, to (a) the heirs of Herbert and William (who died before the testator) determined as of the date of the testator's death, and to the personal representatives of such of those heirs as have died (including Henry's executors with respect to the one-twelfth share taken through Henry as an heir of Herbert) and (b) with respect to the one-third share of principal which Henry took directly as a surviving brother of the testator (and not as an heir of Herbert, see notes 1, 4, *supra*), to Henry's heirs determined as of Henry's death.[6]

The issues raised by the present appeals are: *First.* — What persons are entitled to the one-sixth share of surplus

[5] See discussion of this modification (which related to the one-twelfth share of income formerly received by Henry as an heir of Herbert) in note 4, *supra.*

[6] This court in *Boston Safe Deposit & Trust Co.* v. *Northey,* 332 Mass. 110, 114, declined to give instructions about the disposition of principal at Caroline T. Peabody's death while she still remained alive. In the present case, various then existing administrative reasons were set forth in the amended answer filed by the executor of Herbert's widow, which the Probate Court apparently felt were sufficient to lead it to give such instructions. Whether this was appropriate has now become unimportant because of the death of Caroline T. Peabody in August, 1956, after the Probate Court decree.

income, formerly payable to Herbert's widow, from the date of her death until the death of Caroline T. Peabody? *Second.* — Are the ultimate distributees of the principal to be (1) the heirs of Herbert, William, and Henry determined at Caroline T. Peabody's death, or (2) the heirs of Herbert and William determined at the testator's death[7] and the heirs of Henry determined at Henry's death? We hold that the decree of the Probate Court was correct on both issues.

Where there is a gift by will to the "heirs" either of the testator or of another, the usual rule of construction is that the heirs are to be determined as of the death of that person. *Sweeney* v. *Kennard,* 331 Mass. 542, 544–546, and cases cited. Where, however, the ancestor of the heirs so designated dies before the testator, the general rule is modified to the extent that the heirs referred to are deemed to be the heirs of the designated ancestor determined as of the date of the testator's death when, of course, the testator's will takes effect. See *Swallow* v. *Swallow,* 166 Mass. 241, 243, where with respect to a gift by will "to the heirs of . . . my late husband" (naming them) it was said: "If the gift had been to the heirs of her husband, without naming them, then the persons who were at the time of her death the heirs of her husband would have taken this one half." See Restatement: Property, § 309, comment e, which reads in part: "When the designated ancestor predeceases the effective date of the dispositive instrument, the described group is not ascertained by the application of any statute governing the intestate succession of property until the date the instrument takes effect in the absence of a contrary indication of intention." See also Restatement: Property, § 308, comment 1; 5 Am. Law of Property, § 22.60 at pages 438, 441; Casner, Construction of Gifts to "Heirs and the Like," 53 Harv. L. Rev. 207, 230, 232–233, 235, where cases from other jurisdictions are collected; 3 Page, Wills

---

[7] With the estate or legatee of each heir of either Herbert or William who died before Caroline T. Peabody taking the share of such heir on final distribution, on the theory that these shares became vested remainders at the testator's death.

(3d ed.) § 1055.[8]   Compare 2 Scott, Trusts (2d ed.) §§ 112.3, 127.4 at page 925.

These usual rules will yield to a contrary indication in the testator's will. See *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531–534. See for analogous situations *Proctor* v. *Clark*, 154 Mass. 45, 48; *Newton-Waltham Bank & Trust Co.* v. *Miller*, 325 Mass. 330, 332–334. Nothing appears, however, in the present case to take either the gifts of surplus income or the gifts of principal out of the usual rules.

The reason advanced for varying the usual rule is that the termination of the life estate of Caroline T. Peabody must precede the distribution of principal, thus permitting a later determination of the persons who will take the principal. On analogous circumstances, such a contention was rejected in *Sweeney* v. *Kennard*, 331 Mass. 542, 544–545. Equally unconvincing is the suggestion that the words "by right of representation" in clause (c) in some manner indicate that there should be a postponement of determination of the statutory heirs. A similar contention was also rejected in *Sweeney* v. *Kennard, supra,* at page 545.[9]   See *Old Colony Trust Co.* v. *Clemons*, 332 Mass. 535, 540. There is also no merit in the suggestion that the principle discussed in Restatement: Property, § 249, is applicable to cases of remainders following the life of a person already dead at the death of the testator, as of which the will speaks. This suggestion is plainly not consistent with the principle just mentioned. See Restatement: Property, § 249, comment c, second paragraph. Compare *Old Colony Trust Co.* v. *Barker*, 332 Mass. 533, 534. We find nothing in clause (b) or in the will as a whole to indicate that the testator intended that, during the life of Caroline T. Peabody, the surplus income

---

[8] The rule of the English cases is the same and has been applied to situations closely resembling the present case. *Re Philps' Will*, L. R. 7 Eq. 151, 154 (1869). *Wingfield* v. *Wingfield*, L. R. 9 Ch. Div. 658, 666. *Re Whitehead*, [1920] 1 Ch. 298, 304. Compare *Re Hooper*, [1936] 1 Ch. 442, 446–449, where it was held that the testator had expressly designated a different time.

[9] *Wood* v. *Bullard*, 151 Mass. 324, 333–334, quoted in the brief of the guardian ad litem, was the case of a contingent gift following a life estate to heirs at law "then surviving" and is distinguishable.

share of each of the testator's brothers who should die at any time should be paid to such persons as might be that brother's heirs from time to time, or justifying any other similar variation from the usual rule. Compare *Thompson* v. *Bray*, 313 Mass. 717; *Worcester County Trust Co.* v. *Marble*, 316 Mass. 294, 297; *Taylor* v. *Albree*, 317 Mass. 57, 62–65; *McKay* v. *Audubon Society, Inc.* 318 Mass. 482, 486, in all of which there were special circumstances, of a type not appearing in the present record, leading to a variation.

What has been said requires ruling that the shares of the heirs of Herbert and William, under both clause (b) and clause (c), were vested at the death of the testator. Accordingly their heirs, determined as at the testator's death, are the proper persons to receive the shares of income and of principal which Herbert and William would have received if they had survived to take. In the case of those of Herbert's and William's heirs who died after the testator and prior to the death of Caroline T. Peabody, their vested shares, of both income and principal, must go to their estates.

In the case of the one-third share given directly by clause (c) to Henry, who survived the testator (but not as to the one-twelfth share which he took as heir of Herbert), the matter is governed by the principles held to be controlling in *Boston Safe Deposit & Trust Co.* v. *Northey*, 332 Mass. 110, 112–113. Although the language of clause (c) varies slightly from that of clause (b), there considered, the same result should be reached and this one-third share should be paid to Henry's heirs determined at his death.

Costs and expenses of this appeal are to be in the discretion of the Probate Court.

*Decree affirmed.*