Boston Safe Deposit & Trust Company, trustee, *vs.* Carla M. Wilbur & others.[1]

Barnstable. February 10, 2000. - May 11, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, Spina, & Cowin, JJ.

*Will,* Construction. *Trust,* Distribution, Adopted child. *Devise and Legacy,* Adopted child. *Statute,* Construction. *Laches. Words,* "Representatives," "Statutory distributees."

Where a testator used the precise language necessary in his will and codicils to identify lineal descendants, i.e. "issue," as beneficiaries, his use of the term "representatives" was intended to refer, in the circumstances, to statutory distributees of the testator's grandchildren, and where the drafters of the will were shown to be familiar with the accurate use of those legal terms, the drafters were presumed to have meant the term "representatives" to refer to statutory distributees. [433-437]

An adopted daughter of a testator's grandson was entitled to share in trust income and principal, where the testator did not use the term "child" or its equivalent to describe those who should take on the death of his last surviving grandchild; thus, the applicable statute, G. L. c. 210, § 8, as effective in 1914, did not operate to exclude the adoptee from so taking. [438-440]

In an action brought by a trustee to determine the proper interpretation and distribution of the trust, an affirmative defense of laches to an adopted great-grandchild's claim should not have been decided on a motion for summary judgment, where the materials submitted raised genuine issues of material fact to be resolved: the matter was remanded for a determination whether the claim was so barred. [440-441]

Civil action commenced in the Barnstable Division of the Probate and Family Court Department on April 28, 1997.

The case was heard by *Robert A. Scandurra,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Raymond H. Young* for the plaintiff.

[1] Sally W. Dolan, Robert E. Lynde, John B. Lynde, Stephanie B. Michaels, Thomas M. Lynde, Jennifer M. Jardin, Lucinda Lilly Hallowell, Frith L. Foss, Susan L. Nickell, and Gretchen Lilly.

*Robert A. Lapping (Ralph G. Picardi* with him) for Carla M. Wilbur.

*Thomas K. Birch,* for Sally W. Dolan & others, was present but did not argue.

Cowin, J. The plaintiff, Boston Safe Deposit and Trust Company (Boston Safe), as trustee of a trust established by the will and codicils of George B. Wilbur (testator), brought a complaint for declaratory judgment to determine the proper interpretation and distribution of the trust. Boston Safe sought to determine whether the testator, by use of the term "representatives" in the trust, intended to include Carla M. Wilbur (Carla), the adopted daughter of the testator's grandson, George II, as an individual entitled to proceeds from the trust.[2] A Probate and Family Court judge granted summary judgment for Carla, declaring that the term "representatives" meant statutory distributees and that under this interpretation Carla had a right to share in trust income and principal. We granted the joint application for direct appellate review of Boston Safe and the other defendants to consider the meaning of the term "representatives" and whether Carla, as the adopted daughter of the testator's grandson, is entitled to share in trust income and principal.

1. *Factual background.* We summarize the undisputed facts appearing in the summary judgment record. The testator died in 1914 leaving a 1904 will, amended by two codicils in 1906 and 1913, all of which were drafted by the law firm of Adams & Blinn. The testator had four children by his first wife, Hannah,

---

[2]The complaint named as defendants Carla and ten other individuals (other defendants), all of whom might have an interest in the trust income and principal. Under Boston Safe's interpretation of the trust, the other defendants had been receiving income payments from the trust, but Carla had not. Boston Safe sought a declaratory judgment that Carla was not entitled to any past or present income or any principal from the trust. Carla filed an answer and counterclaim asking the court to order Boston Safe to pay her past and present income and principal from the trust. The other defendants, who had been receiving income from the trust, filed an answer aligning themselves with Boston Safe and seeking a declaratory judgment that Carla was not entitled to any past or present income or any principal from the trust. The other defendants filed a separate brief in this court supporting their position. In its answer to Carla's counterclaim, Boston Safe raised affirmative defenses, including that Carla's counterclaim was barred by the doctrine of laches.

and no children by his second wife, Frances.[3] At the time of his death, three of the testator's children, Charles, Sr.; Clara; and Mabel, were alive; his daughter Mary had predeceased him in 1905.

When the testator executed the second codicil to his will in 1913, two of his daughters, Clara and Mabel, were childless and apparently beyond childbearing years. The testator had five grandchildren, Alice (Mary's daughter), George II, Mabel, Bessie, and Charles, Jr. (Charles, Sr.'s children).[4] None of the grandchildren had issue at the time of the second codicil or at the time of the testator's death. In 1970 George II married Barbara, and in the following year he adopted her biological daughter, Carla.

Article Sixth of the second codicil, which revoked Article Fourth and Seventeenth of the original will, is the critical provision in this dispute because it established the trust under consideration in this case.[5] In Article Sixth (B), the testator created five separate trusts from the residue of his estate. Article Sixth (B)(b), (d), and (e) created trusts for the benefit of the testator's granddaughter, Alice, and his daughters, Clara and Mabel.[6] While the provisions of each trust varied slightly, a provision in each stated that, on the death of the beneficiary or the beneficiary's spouse, the trust property was to be distributed according to the beneficiary's general power to appoint by will or, in the default of the exercise of that power, to the beneficiary's "heirs at law . . . in accordance with the Statutes of this Commonwealth."

Article Sixth (B)(c) established the trust in dispute, which was intended for the benefit of Charles, Sr., the testator's son. The trust provided that on the death of Charles, Sr. and his wife, the trustee was to pay all the income to the children of Charles, Sr. "and the representatives of any deceased child, share and share alike, the latter taking by right of representation." The principal of the trust was to be distributed twenty-

---

[3]The testator's first wife, Hannah, predeceased him in 1882. The testator's second wife, Frances, died in 1933.

[4]All the grandchildren were alive at the time of the testator's death. No additional grandchildren were born after the testator's death.

[5]The first codicil to the will revised, inter alia, the provisions of the will concerning the testator's daughter, Mary, because she predeceased him.

[6]Article Sixth (B)(a) created a trust for the benefit of the testator's wife for the term of her life.

one years after the death of the last of Charles, Sr.'s children who was alive at the time of the testator's death "among the children of . . . Charles [Sr.] then living and the representatives of any deceased child, share and share alike, the latter taking by right of representation."

George II was the last surviving child of Charles, Sr. He died on April 4, 1976, and was survived by his wife Barbara and his adopted daughter Carla. In his will, George II made specific bequests to Carla and Barbara and left the residue of his estate to Barbara. Barbara died on June 14, 1977, leaving a will and testamentary trust under which Carla was the sole beneficiary.[7] Because of Boston Safe's interpretation of the term "representatives," no income or principal from the testator's trust has ever been paid to Barbara's estate, her trust, or on Carla's behalf. On April 2, 1997, shortly before the trust was to terminate and principal was to be distributed, Carla met with Boston Safe and informed them of her claims to share in both income and principal from the trust. Boston Safe thereupon brought this action.

The question before us is whether in the trust established in Article Sixth (B)(c) for the benefit of Charles, Sr. and his children, when the testator directed that income and principal be paid to "the representatives of any deceased child, share and share alike, the latter taking by right of representation," he intended that Carla share in the income or principal of the trust. Carla argues that the testator used the word "representatives" in the will to mean statutory distributees i.e., one to whom a fiduciary distributes personalty under our laws of descent and distribution. See *Harrison* v. *Stevens*, 305 Mass. 532, 536 (1940). Carla claims that as the adopted daughter of George II she is one of his statutory distributees and is therefore entitled to both income and principal under the trust. Boston Safe contends that the testator used the term "representatives" to mean "issue" (i.e., lineal descendants) and that therefore Carla, as an adopted daughter of the testator's grandson, is not entitled to either income or principal under this construction. In order to resolve this dispute, we must first determine the meaning of "representatives" intended by the testator and then whether that

[7]Boston Safe was the executor of Barbara's will and trustee of the trust for Carla's benefit. On Barbara's death, the court appointed a guardian ad litem on behalf of Carla and the guardian ad litem assented to Boston Safe's accounts as executor of Barbara's will.

meaning allows Carla, as an adopted daughter of the testator's grandson, to receive trust proceeds.

2. *Meaning of the term "representatives."* In determining the meaning of the term "representatives," the "fundamental rule for the construction of wills is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution and to give effect to that intent unless some positive rule of law forbids." *Lockwood* v. *Adamson*, 409 Mass. 325, 328 (1991), quoting *Fitts* v. *Powell*, 307 Mass. 449, 454 (1940). Based on our review of the indicia of the testator's intent, we conclude that the term "representatives" means statutory distributees.

A comparison of the language of the original will with that of the second codicil illuminates the testator's intent. The second codicil revoked Articles Fourth and Seventeenth of the original will and replaced them with Article Sixth. Article Seventeenth provided that each of the testator's children would receive a share of the residue of his estate and that, if any of the children predeceased the testator, that child's "issue" would receive that child's share. Article Fourth (d) of the original will established a trust for the benefit of Charles, Sr. and used the term "representatives" to describe those who would take trust income and principal after Charles, Sr.'s death. Article Sixth (B)(c) of the second codicil essentially replicated the terms of Article Fourth (d), which used the term "representatives" to describe who should receive trust income and principal after Charles, Sr.'s death. After the second codicil, the term "issue" no longer appeared in the testator's will.

Given the testator's knowledge and use of the specific term "issue" in Article Seventeenth, in contrast to his use of the term "representatives" in Article Fourth, it appears that the testator knew the precise language necessary to identify lineal descendants (i.e., issue) as beneficiaries. See *Boston Safe Deposit & Trust Co.* v. *Schmitt*, 349 Mass. 669, 673 (1965) (testator using explicit language in one part of will and omitting language in other part of will indicates different intent of testator in other part of will). His understanding of the difference between the terms "issue" and "representatives" is highlighted by the fact that the testator detailed who should take under the

subsequently superseded Article Seventeenth if no issue existed.[8]
However, under Article Fourth (d), the testator provided no
contingency for who should take if no representatives existed at
the time of distribution. This further suggests the testator's
awareness of the different legal usage of the terms "issue" and
"representatives" because it indicates that the testator was
aware that an individual could die without issue, but usually not
without representatives (i.e., statutory distributees). Based on
the testator's understanding of the difference between represen-
tatives and issue when drafting his original will, it is unlikely
that the testator would use the term "representatives" in Article
Sixth (B)(c) of the second codicil, essentially a replication of
Article Fourth (d) of the original will, to mean issue. See *Boston
Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 260 (1940)
(use of "issue" in juxtaposition with "child" indicates testator
recognized difference in meaning of words).

Our definition of the term "representatives" is also guided by
the interpretation used in like situations in past cases. We
confronted a similar will provision in *Sweeney* v. *Kennard*, 331
Mass. 542 (1954). There, the will provided gifts to the testator's
"sons 'or their heirs by right of representation.' " *Id.* at 544.
The testator's lineal descendants argued that the term "heirs"
was used to mean issue. *Id.* at 545. We disagreed because, inter
alia, the testator had used the term "issue" in other parts of the
will. *Id.* We concluded that, because the testator expressly
mentioned "issue" in other parts of the will, he would have
done so again had that been his intended reference. *Id.* By using
"heirs" the testator must have intended a different meaning,
which we determined to be "beneficiaries" as defined in the
intestacy statute. Similarly, in this case, the testator used
"representatives" while using "issue" in other parts of the will,
indicating his intention to use the term to mean something other
than "issue."

Prior to the execution of the second codicil, our cases defined
the term "representatives" to mean executors or administrators,
or statutory distributees.[9] *Bailey* v. *Smith*, 214 Mass. 114 (1913).
See *Olney* v. *Lovering*, 167 Mass. 446, 448 (1897) (statutory

---

[8]The testator provided, in Article Seventeenth, that if any of his children
left no issue, then that child's share would be divided between the other
children or their issue.

[9]Although at one point in her brief Carla suggests that the term "representa-
tives" might mean executors or administrators, she later concedes that this

distributees); *Eager* v. *Whitney*, 163 Mass. 463, 465 (1895) (statutory distributees); *Bates, petitioner*, 159 Mass. 252, 258 (1893) (executor, administrator, or statutory distributees); *Cox* v. *Curwen*, 118 Mass. 198, 200 (1875) (executors and administrators).

Boston Safe relies on only one Massachusetts case for the proposition that the term "representatives" means issue. See *Wentworth* v. *Bell*, 249 Mass. 120 (1924). That case was decided eleven years after the testator drafted the second codicil in this case, and the interpretation of representatives there to mean issue was necessary to avoid an intestacy in a will "not drafted with technical nicety." *Id.* at 122. See *New England Merchants Nat'l Bank* v. *Frost*, 357 Mass. 158, 163 (1970), and cases cited (will should be interpreted with presumption that testator did not intend to draft will to cause intestacy). The other cases on which Boston Safe relies to support its contention that the term "representatives" means issue are from other jurisdictions. When our law has defined the meaning of a term, a testator is entitled to rely on that definition when drafting his will. See *Johnson* v. *Johnson*, 215 Mass. 276, 285 (1913) ("The testator . . . may be fairly assumed to rely upon the law of this Commonwealth for the rules to be applied in the interpretation of his testamentary words"). See also *Hawley* v. *Northampton*, 8 Mass. 3, 39 (1811) ("The importance of adhering to a course of decisions in the construction of wills, is manifest; for their authority has established a rule of property on which many estates depend, and to overturn them would introduce perplexing uncertainty, and might shake many titles resting on the faith of them"). Thus, in 1913, when the second codicil was drafted, the term "representatives" had been interpreted consistently by this court to have statutory distributees as one of its accepted meanings. In light of the existing case law in 1913, it is unlikely that the testator would use the term "representatives" to mean issue, a definition of "representatives" not found in any of this court's decisions at the time.

Moreover, the testator's will and its codicils were drafted by the Boston law firm of Adams & Blinn, which served as the legal counsel in *Bailey* v. *Smith, supra.*[10] The *Bailey* case was

construction is unlikely and "it [is] more likely from the context that [the testator] intended 'statutory distributees.' " Accordingly, we do not address Carla's claim that the term "representatives" might mean "executors or administrators."

[10]G.R. Blinn represented one of the parties in *Bailey* v. *Smith*, 214 Mass.

decided just three months before the drafting of the testator's second codicil. There, a will provided that income from a trust was to be divided equally between the children of the testator's brothers or "their representatives." *Id.* at 119. We held that, in the circumstances of that case, the term "representatives" meant "those who would take as their heirs under our statutes of descent and distribution, and not their executors or administrators." *Id.* at 120.

When a will is drafted by a person familiar with the accurate use of legal terms, it is presumed that the legal terms were used correctly and with the intent that they be interpreted in conformity with the law. See *Loring* v. *Dexter*, 256 Mass. 273, 277-278 (1926). Because the court had recently defined the term "representatives" to mean statutory distributees, and had never defined that word to mean issue, the conclusion is inescapable that the drafter meant the term to refer to statutory distributees.[11]

The other defendants argue that the testator's intent to benefit only his issue is indicated by the provision in Article Sixth (B)(c) that representatives take "by right of representation." According to the other defendants, the term "representatives" cannot mean statutory distributees because it would be redundant to state that statutory distributees take "by right of representation" and a will should be interpreted to give meaning to all words used by the testator. The other defendants assert that, because the phrase "by right of representation" describes the manner in which beneficiaries take (i.e., the method for determining distribution) and the intestacy statute also prescribes the manner in which beneficiaries takes, the testator, if he intended "representatives" to mean statutory distributees, would not have modified it by the phrase "by right of representation." We disagree. In these circumstances, the testator intended the intestacy statute to identify who would take (i.e., the beneficiaries) and the phrase "by right of representation" to identify the manner in which these beneficiaries would take.

A similar argument was raised in *Sweeney* v. *Kennard, supra.* There, the lineal descendants argued that, by using the phrase "by right of representation" to modify the term "heirs," the testator evinced his intent that only lineal descendants should

114, 119 (1913). Geo. R. Blinn of Adams & Blinn served as a witness to the execution of the second codicil to the testator's will.

[11]See note 9, *supra.*

take. We rejected this argument and concluded that other evidence of the testator's intent indicated that the testator intended the intestacy statute to determine the identity of the beneficiaries, while the phrase "by right of representation" determined the manner by which the beneficiaries would take. *Id.* at 545-546.

The circumstances in this case are similar to *Sweeney*. Other evidence, including the use of the term "issue" in other parts of the will, indicates that the testator did not intend the term "representatives" to mean issue. Thus his use of the phrase "by right of representation" defines the manner by which the beneficiaries should take. See *Gustafson* v. *Svenson*, 373 Mass. 273 (1977).

Boston Safe contends that at the time the will and its codicils were executed the terms "heirs at law" and "statutory distributees" had similar meanings.[12] Boston Safe argues that because the testator had used the term "heirs at law" in the will to refer to beneficiaries to be determined by the intestacy statutes, he would not have used the term "representatives" to have the same meaning. We acknowledge that this argument has some merit. The use of "heirs at law" and "representatives," terms with similar legal meanings, in the same article of the will, has created much of the controversy surrounding the interpretation of the testator's will. However, "[t]he proper rule for the construction of a will does not 'permit some of the words of a will to contravene an intent fairly to be deduced from the study of the will as a whole and of the circumstances in light of which it was executed.' " *Bramley* v. *White*, 281 Mass. 343, 349 (1933), quoting *Crowell* v. *Chapman*, 257 Mass. 492, 495 (1926). The difficulty with accepting Boston Safe's argument is that it is inconsistent with the other considerations we have discussed. After examining the language and structure of the testator's will and its codicils in the context of the information available to the testator and his attorneys at the time the second codicil was drafted, we conclude, on balance, that interpreting "representatives" to mean statutory distributees is consistent with the testator's intent.

---

[12]The term "heirs at law" refers to the beneficiaries of realty under the intestacy statutes, while statutory distributees refers to distribution of personalty under the intestacy statutes. See *Taylor* v. *Albree*, 317 Mass. 57, 62 (1944). Prior to 1902, the individuals who took as heirs at law were different from the individuals who took as statutory distributees. However, in 1902, that distinction was abolished. R.L. c. 140, § 3 (1902).

3. *Carla's share as a statutory distributee.* Having concluded that the testator intended the term "representatives" to refer to the statutory distributees of the testator's deceased grandchildren, we now consider whether Carla may share in trust income and principal as the adopted daughter of the testator's grandson, George II.[13] This is governed by statute. General Laws c. 210, § 8, defines whether an adoptee can take under a will. From 1876 until 1958, § 8 provided that the term "child" or its equivalent included adopted children of a testator, but did not include children adopted by people other than the testator unless it plainly appeared to have been the testator's intent to include such an adopted child. St. 1876, c. 213, § 9. In 1958, the statute was amended to provide that the term "child" or its equivalent included all adopted children in the family. St. 1958, c. 121, § 1. The testator's will and its codicils are governed by the version of § 8 in effect in 1914 at the time of the testator's death. *Callan* v. *Winters*, 404 Mass. 198, 199-200 (1989). Boston Safe argues that, under this version of G. L. c. 210, § 8, Carla is not entitled to income or principal as the adopted daughter of the testator's grandson. We disagree.

If the testator had used a term that meant "child" to describe who should take on the death of his last surviving grandchild, under the version of § 8 in effect in 1914, Carla, as the adopted daughter of that grandchild, would not receive trust benefits. Thus, if the term "statutory distributees" is the equivalent of "child," Carla would not be entitled to trust income and principal. Because we conclude that the term "statutory distributees" is not the equivalent of "child," § 8 does not apply.[14] In reaching our conclusion, we use the same reasoning as we applied in *Moore* v. *Cannon*, 347 Mass. 594 (1964). There, the testator in 1925 established a testamentary trust providing, inter alia, that trust proceeds would be paid "to those who would have been entitled to receive such part of my . . . estate had such child died intestate vested with the title thereto." *Id.* at 596. The trustees sought a declaratory judgment to determine

[13]As we have concluded that the term "representatives" means statutory distributees, we shall henceforth refer to statutory distributees rather than representatives.

[14]"Issue," "heirs," and "children" had been construed to exclude an adopted child under the version of G. L. c. 210, § 8, in effect prior to 1958. *Old Colony Trust Co.* v. *Wood*, 321 Mass. 519, 523-524 (1947). *Bundy* v. *United States Trust Co.*, 257 Mass. 72, 80 (1926). *Walcott* v. *Robinson*, 214 Mass. 172, 176 (1913). *Wyeth* v. *Stone*, 144 Mass. 441, 443-444 (1887).

whether an adopted child of one of the testator's sons would be entitled to trust proceeds. We held that the adopted child was entitled to share in trust proceeds because the pre-1958 version of G. L. c. 210, § 8, did not apply. *Id.* at 599-600. Because the testator referred to the laws of intestacy to determine who was to share in trust proceeds, we concluded that the testator had not used a word that meant the same thing as "child." *Id.* at 599. Further, we concluded that no public policy consideration required including this phrase. *Id.*

The *Moore* case is virtually identical to the circumstances here. The testator chose to leave the trust proceeds to the statutory distributees of his grandchildren. He did not use the words "child," "children," "issue," or "heirs," the terms which we had held mandate the application of the pre-1958 rule of construction. As we concluded in *Moore*, current public policy does not favor extending the application of the pre-1958 construction of G. L. c. 210, § 8, unless the phrase used clearly means child. Compare *Moore v. Cannon, supra* at 599 (adopted child of testator's son takes when will provides that trust proceeds be distributed according to laws of intestacy), with *Boston Safe Deposit & Trust Co. v. Fleming,* 361 Mass. 172, 178-183 (1972) (adopted children of testator's daughter do not take when will provides that trust proceeds were to be distributed to deceased daughter's "issue").

Boston Safe argues that *Moore* is inapplicable because in that case the testator stated that property should be distributed intestate as if title had vested in his deceased son. Boston Safe contends that, because the testator did not explicitly state that property should be vested in George II, the reasoning of *Moore* does not apply. It is not significant that the testator used a slightly different term. By specifying that trust proceeds were to go to the "representatives" of any deceased child, the testator intended the trust proceeds to be distributed to his statutory distributees. It is not possible to distribute assets to individuals as if they were statutory distributees if it is not assumed that title to the assets had vested in the deceased person because the intestacy statute only operates to distribute the assets of deceased people. While not drafted as explicitly, the testator in this case obviously had the same intent as the testator in *Moore*: to distribute the trust proceeds as if it were the deceased child's own property.

Boston Safe also contends that, because we have held that

the term "heirs at law" means child, and under the intestacy statutes after 1902 the terms "statutory distributees" and "heirs at law" have the same statutory meaning, we must interpret the term "statutory distributees" as meaning child, thereby invoking the provisions of the pre-1958 version of § 8. We disagree. While it is true that we have held that the term "heirs at law" was an equivalent of the term "child," see *Wyeth* v. *Stone,* 144 Mass. 441, 443-444 (1887), we were referring in that case to "heirs at law" in its common-law sense. At common law, "heirs at law" referred to lineal descendants, which is a word equivalent to "child." See *Blodgett* v. *Stowell,* 189 Mass. 142, 144 (1905) (holding that heirs "by right of representation" is the equivalent of "child"). The testator did not use the term "statutory distributees" synonymously with the common-law meaning of "heirs at law." Rather, he used the term "statutory distributees" to mean the same as statutory "heirs," which we have previously held was not the equivalent of "child." See *Moore* v. *Cannon, supra* at 599.

There is nothing in the record to indicate that the testator intended to exclude an adopted family member from receiving benefits from his estate. By leaving trust income and assets to the statutory distributees of his grandchildren, the testator evinced an intention to benefit his family. There is no suggestion that the testator intended to establish limits on the distribution of the trust income and principal beyond his general intent to benefit his family as far into the future as possible. Thus, because the testator referred to "statutory distributees" rather than "children" and there is no other evidence that the testator desired to exclude an adopted family member from sharing under the will, there is no bar to an adopted great grandchild receiving trust proceeds. Under the intestacy statute in effect at the time of George II's death in 1976, Carla is the testator's statutory distributee. *Taylor* v. *Albree,* 317 Mass. 57, 62 (1944) ("in the absence of indication to the contrary, a gift to the heirs or distributees of a person is construed to mean those who are such at his death"). As such she is entitled to trust income dating from the death of her father in 1976 and to a share of the principal that was to be distributed in 1997.[15]

4. *Laches.* The Probate Court judge properly interpreted the will and its codicils. Summary judgment, however, was not ap-

---

[15]Because of our conclusion that Carla has an independent right to trust income and principal we need not consider her alternative argument that she

propriate here. Boston Safe raised the affirmative defense of laches in its answer to Carla's counterclaim. In addition, the affidavits submitted by Carla in support of her motion for summary judgment raise genuine issues of material fact as to when she was aware that she was a possible beneficiary under the testator's will, and Boston Safe addressed the issue of laches in its memorandum in opposition to Carla's motion for summary judgment. Because the summary judgment decision did not address Boston Safe's contention that Carla's claim is barred by laches, a genuine issue of material fact exists and summary judgment was not appropriate for that reason.

5. *Conclusion.* The judgment is vacated and the matter is remanded to the Probate Court solely for a determination of whether Carla's claim is barred by laches. If her claim is not so barred, judgment is to enter for Carla.

*So ordered.*

---

would be entitled to a full share of trust income and principal as the sole beneficiary of Barbara's will.